ESTHER L. CROCKETT *vs*. ETHEL R. BORGERSON.

Knox.        Opinion November 28, 1930.

*Elisha W. Pike*, for plaintiff.
*Walter H. Butler*,
*Frank A. Tirrell, Jr.*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

FARRINGTON, J.    This is an action in a plea of land, reported upon so much of the evidence contained in the record as may be legally admissible, together with certain admissions, agreements and stipulations.

The defendant pleaded the general issue and by way of brief statement recited her purchase at the Sheriff's sale May 31, 1922, her payment of the mortgage herein referred to, and the discharge thereof, and claims subrogation to the right and lien of the mortgage thus paid.  Further claim is made in said brief statement that the demandant being cognizant of all the facts as to the judgment under which defendant took title, and having given a deed of her own interest, and having "stood by" for eight years, and having suffered the defendant to expend money for improvements, is now estopped from setting up any title for her own advantage in this action.  Certain other claims made in the brief statement need not be mentioned or considered under the result reached in this opinion.

The demandant claims title to an undivided two-thirds of the demanded premises under a Sheriff's deed to her dated March 25, 1930, as will appear.  Title to the other undivided third is claimed by her by reason of a decree of divorce from Vernard C. Crockett granted January 17, 1929, in the Supreme Judicial Court for

Knox County, in which decree she was given $2,750.00 in lieu of alimony, together with taxable costs.

A recital of events leading down, in point of time, to the divorce proceedings above mentioned, and a discussion of the law therein involved, will serve to show the defendant's claims to title and whether those claims avail her, and also will bring us to the final conclusion as to whether or not, or how far, the demandant can prevail.

On January 17, 1918, Frank M. Piper by warranty deed conveyed the demanded premises, situated on the Northerly side of Clarendon Street in Rockland, Maine, to Vernard C. Crockett, aforesaid, the then husband of the demandant in this action. On January 18, 1918, he, the demandant joining in the deed, mortgaged the premises to Rockland Loan and Building Association for the sum of $1,200.00. The mortgage was duly recorded January 19, 1918.

By writ dated July 19, 1921, Webber Market Company brought suit against "Vernard Crockett." The account annexed to the writ was as follows:

"To groceries and provisions for the month of June, 1920 $34.74
"      "      "      "      "   "   "   " July, 1920    76.20
"      "      "      "      "   "   "   " Aug., 1920    72.08"
and then ditto marks for "groceries and provisions for the month of" August, September, October, November and December, 1920, and January, February, March, April, May, June and July, 1921, with the amounts carried out for each month as above.

On the same date as that of the writ a real estate attachment on said writ was made in the usual form, duly filed and recorded. On April 7, 1922, judgment was rendered for $780.54, covering debt and costs. On April 12, 1922, execution was issued, and on April 17, 1922, by virtue of this execution, Raymond E. Thurston, Sheriff of Knox County, according to the record of his levy, attached to the execution and part of the record in this case, "took the following described estate and all the right, title and interest which the within named Vernard Crockett had in and to the same on the nineteenth day of July A.D. 1921, at five minutes past two o'clock in the afternoon, the time when the same was attached

on the original writ, to wit: — " and after describing other parcels "all the equity" which the said Crockett had in ·the demanded premises. It appears in evidence and undisputed that "Vernard Crockett" referred to is the same "Vernard Crockett" from whom the divorce was later secured by the demandant, as appears in the opinion. At this time the Rockland Loan and Building mortgage was still in force, a discharge having been obtained by defendant October 9, 1928.

On May 31, 1922, Sheriff Thurston, in consideration of the sum of three hundred fifty dollars, executed and delivered to the defendant a deed of "all the right, title and interest which the said Crockett has or had to the premises above described," being the demanded premises. In the deed due recital was made that the conveyance was subject to redemption as provided by law. The record discloses no redemption either by Crockett or by any other person.

It is admitted that when the writ was served on defendant, she was in possession of demanded premises and had been since May 31, 1922.

Sec. 60, Chap. 86, R. S. (1916), contains this provision: "No attachment of real estate on mesne process creates any lien thereon, unless the nature and amount of plaintiff's demand is set forth in proper counts, or a specification thereof is annexed to the writ, . . ."

It is admitted under the stipulations that the formal notices, posting, notice to the principal defendant, and publication were properly given as recited in the Sheriff's deed to the defendant. The demandant, however, contends that in the writ in the suit of Webber Market Company "the nature and amount of plaintiff's claim" is not "set forth in proper counts" and that no proper specification was annexed to the writ, and that for that reason the real estate attachment created no lien on the premises attached, and that therefore the Sheriff's deed conveyed no title to the defendant.

The demandant's contention that the real estate attachment created no lien is well founded. *Bennett* v. *Davis*, 62 Me., 544; *Belfast Savings Bank* v. *Kennebec Land and Lumber Co.*, 73 Me.,

404; *Bartlett* v. *Ware*, 74 Me., 292; *Hanson* v. *Dow*, 51 Me., 165; *Saco* v. *Hopkinton*, 29 Me., 268.

In the instant case, however, no rights of third parties are concerned. The record shows no intervening attachments, or conveyances by way of mortgage or otherwise, between the date of the attachment and the date of the sale to defendant on the levy on the execution. In the cases cited in regard to the attachment lien, rights of innocent third parties had arisen between dates of attachment and sale under the levy and sales on seizure or levy were properly held to convey no title against them.

Chap. 81, Sec. 32, R. S. (1916), provides that "such seizure and sale pass to the purchaser, all the right, title and interest that the execution debtor has in such real estate at the time of such seizure, or had at the time of the attachment thereof on the original writ, subject to the debtor's right of redemption."

The defendant is not limited to rights of levy or seizure afforded by and under a lien created by the attachment which in this case failed. The seizure and sale passed to her "the right, title and interest" that Vernard C. Crockett had in the real estate at the time of the seizure, when there were no other hostile or intervening rights, and for that reason, in our opinion it is immaterial that the levy or seizure in the instant case was not recorded. "The record is important to protect innocent parties; it is of no importance to the debtor. He does not suffer if a record is never made, nor can he be injured by a subsequent sale or extent upon his land, under an unrecorded seizure." *Swift* v. *Guild*, 94 Me., 436.

The seizure and sale in the case before us were sufficient to vest the title in the defendant, the purchaser, although the seizure was not recorded in the Registry of Deeds. After a seizure and before a sale it would be otherwise as against a bona fide purchaser without notice or an intervening right of an innocent third party.

The general rule against collateral attack on judgments precludes the demandant from raising any question as to the validity of the levy based on the judgment recovered against Crockett. The rule is stated by the Supreme Court of the United States as follows: "If the Court in which the proceedings took place had jurisdiction to render the judgment which it did, no error in its pro-

ceedings which did not affect the jurisdiction will render the proceedings void, nor can such error be considered when the judgment is brought collaterally into question." *McGoon* v. *Scales*, 9 Wall., 23. This rule is approved in *Blaisdell* v. *Inhabitants of the Town of York*, 110 Me., at page 509.

In the Sheriff's deed to defendant it is stated, "Whereas I, Raymond E. Thurston, Sheriff . . . did on the nineteenth day of July A.D. 1921, take and seize . . ." This is manifestly error because just before this statement he recited he was acting on an execution issued on a judgment recovered April 7, 1922. The levy itself attached to the execution and signed by the Sheriff shows the true date of the levy as hereinbefore stated and controls the situation. We do not regard the error as of sufficient importance to require further comment as the rights under the deed are not in any way affected by it.

At this point title to an undivided two-thirds of the demanded premises is in the defendant and there has been no redemption. There is nothing in the record to show that Vernard C. Crockett ever afterwards acquired title to any part of the demanded premises.

On the same date on which the Sheriff's deed was given, May 31, 1922, the demandant, for consideration expressed as "one dollar and other valuable considerations," by quitclaim deed without covenants conveyed to the defendant "all my right, title and interest in and to the house and lot situated on the Northern side of Clarendon Street in said Rockland and known as numbers 26 and 28 on said street, *being my right and interest by descent* in said real estate as the lawful wife of the said Vernard C. Crockett, there being a mortgage on said premises and this interest is in the right in the equity of redemption I may have as the wife of the said Vernard C. Crockett."

No question is raised as to the identity of the property in this deed from the demandant. It is described as "a house and lot on the Northern side of Clarendon Street" in said Rockland known "as numbers 26 and 28 on said Street." These numbers nowhere else appear in the record and outside of the fact that the location is on the Northern side of Clarendon Street, there is nothing else to in-

dicate that it may be or is any part of the demanded premises. The parties to the case, however, appear to have taken the identity as established and to have acted and proceeded on that basis, and the Court therefore feels justified in assuming that the fact of the identity is unquestioned.

Chap. 80, R. S. (1916), Sec. 9, contains this provision: "A husband or wife of any age, may bar his or her right and interest by descent, in an estate conveyed by the other, by joining in the same, or by a subsequent deed, or with the guardian of the other; or by sole deed; but shall not be deprived of such right and interest by levy or sale of the real estate on execution; but may, after the right of redemption has expired, release such right and interest by sole deed."

In our opinion, under the statute quoted, the demandant could not release her "right and interest by descent," which was one-third undivided, subject to the mortgage, until after the right of redemption had expired, and that she did not in her deed release any right.

Moving on in the course of events, we find that on June 21, 1928, the demandant brought divorce proceedings against her husband, Vernard C. Crockett, the writ being returnable at the September Term, 1928, of the Supreme Judicial Court for Knox County. On June 25, 1928, a real estate attachment was made in the usual form. Service on the libelee, "whose residence is unknown" and referred to as "of parts unknown," was by publication, and on January 17, 1929, divorce on the ground of desertion and judgment for $2,750.00 and costs in lieu of alimony was decreed. On execution issued January 24, 1930, from the Knox County Superior Court, levy was made on January 28, 1930, on whatever interest Vernard C. Crockett had in real estate in Knox County, specifying an undivided two-thirds of the demanded premises, and on March 25, 1930, a Sheriff's deed was given to the demandant covering "all the right, title and interest which the said Vernard C. Crockett has or had at the date of the seizure aforesaid."

The Sheriff's deed to the defendant under date of May 31, 1922, there having been no redemption, conveyed all of Vernard C. Crockett's title to the demanded premises, and, there having been

no subsequent acquisition of any interest in it, there was nothing on which an attachment or a levy could operate in connection with the later divorce proceedings, and consequently nothing could or did pass by the Sheriff's deed to the demandant on March 25, 1930. It is therefore not necessary to give further consideration to the validity of that deed.

At this point title to two undivided thirds of the demanded premises is clearly in the defendant. There was no title in the libelee, Vernard C. Crockett, on which the demandant could base her claim to two undivided thirds, as has been stated, and no title upon which she could base a claim to one undivided third as provided in Sec. 9, Chap. 65, R. S. (1916), that "when a divorce is decreed to the wife for the fault of her husband for any cause (*save impotency*), she shall be entitled to one-third in common and undivided of all his real estate . . . which shall descend to her as if he were dead."

If the demandant has title to a one-third undivided interest it is by virtue of the situation existing May 31, 1922, when she gave to the defendant a quitclaim deed, without covenants of any sort, of her "right and interest by descent" in the demanded premises "as the lawful wife of the said Vernard C. Crockett."

It appears to be a well settled principle of law in this state that if a grantee receives and accepts a deed containing no covenants he can not recover back the consideration on failure of title, unless there has been fraud, circumvention or purposed concealment. *Joyce* v. *Ryan exlt.*, 4 Me., 101; *Bishop* v. *Little*, 5 Me., 366; *Emerson* v. *County of Washington*, 9 Greenleaf, p. 94; *Butman* v. *Hussey*, 30 Me., 263; *Stewart* v. *Crosby*, 50 Me., 130.

In *Stewart* v. *Crosby*, supra, the Court says, "The mistake which the grantee in a deed of quitclaim makes, when he pays for a release which is valueless, is not a mistake of fact, which will enable him to recover back the money paid. Everyone who takes such a deed expects to be benefited thereby, else he would not purchase, but, if there be no covenants, he risks the goodness of the title acquired. Neither would the plaintiffs be better off in equity." These cases came up in an action for money had and received, an action based and grounded in equity.

In the case of *Pike* v. *Galvin*, 29 Me., 183, which was a writ of entry, the Court said, "Where one has made a conveyance of land by deed containing no covenant of warranty, an after acquired title will not enure or be transferred to the vendee; nor will the vendor be estopped to set up his title subsequently acquired, unless by doing so he be obliged to deny or contradict some fact alleged in his former conveyance."

In the same case, page 187, the Court says, "One, who acquires no title by a release without covenants respecting the title, can not recover back the purchase money, which he paid for it. *Emerson* v. *The County of Washington*, 9 Greenl., 88. To permit him to acquire a title subsequently purchased by his releasor, would often enable him to obtain in another and less direct mode, property of more value than the purchase money." And the demandant in the action was nonsuited.

The case of *Pike* v. *Galvin* is approved in *Loomis et als* v. *Pingree et als*, 43 Me., 299, at page 314.

The case of *Bennett* v. *Davis*, 90 Me., at page 461, which was a petition for partition, again reaffirms *Pike* v. *Galvin*, supra, and in the opinion the Court says, "Thus we find the law settled in this State as to three classes of deeds, (1) those of full warranty against all the world, (2) those with the covenants of non-claim, and (3) those which purport in terms to convey only the grantor's existing right, title or interest. Under deeds in the first class an after acquired title inures to the grantee. Under deeds in the second and third classes an after acquired title does not pass to the grantee.

"But there seems to be a criterion which, for the purpose of this opinion, may reduce the above named three classes to two, (1) those in which the parties intend to convey an actual estate and protect it against all the world; and (2) those in which parties intend to merely transfer whatever estate the grantor then has, with a guaranty against any then conflicting conveyances or encumbrances. (Which guaranty did not appear in the deed in the instant case.) A grantor in a deed of the first class, having assumed to convey an actual estate and to make it good in the grantee, can not afterwards acquire and hold that estate against his grantee, nor convey it to the detriment of his grantee. He is bound by his

covenant to transfer it to his grantee, and the law, as settled in this state to save circuity of actions, holds it to be thus transferred *ex vigore legis*, even against a subsequent grantee where the first deed was recorded. A grantor in a deed of the second class, not having assumed to convey an actual estate and to make it good against all claims but only to relinquish whatever estate he may have with a guaranty that he has not given anyone else any claim to it, is not bound to make any other title or estate good to grantee. If at the time of his deed, he has suffered no one else to acquire any rights or claims under him, there can be no breach of his covenant. After such a deed he is free to acquire other titles or estates in the same land, and hold them against his grantee, for he never covenanted against such titles or estates, but only against the title or estate he conveyed, whatever it was."

We can see no distinction between the cases where a person gives a quitclaim deed, without covenants, of some interest in real estate which he does not have, and the case of a person who, though having a definite interest in real estate, is at the time of giving the deed, without power to give or make a conveyance effective in fact. In the instant case, when she delivered her deed to the defendant May 31, 1922, the demandant's power to convey was wholly dependent on the statute. On May 31, 1923, or thereafter, she could have conveyed her interest in the premises. Up to that time it was the same in effect as if she had no interest whatever. From May 31, 1923, to the date of bringing her writ in the present action the legal title to that one-third has been and now is in the demandant, and she has the immediate right of possession and can sustain her action to the extent of her ownership.

As to the matter of subrogation claimed by the defendant, we feel that the record in the case is not sufficiently complete to warrant or justify any finding. While it is admitted as a part of the case that the defendant did pay a total of $1,104.24 on the Rockland Loan & Building Association mortgage and that a discharge was executed and delivered to her, there is no testimony throwing any light upon the conditions and circumstances surrounding and accompanying this transaction and we feel that consideration and decision of so important a matter without an opportunity for full

hearing would be unwise and unfair. The fact that the defendant felt that she had title under her two deeds might on its face appear as a sufficient and impelling reason for her to have discharged the mortgage, but to deprive the demandant of the right to furnish whatever explanation she could of the apparently justifiable reason on the part of the defendant for discharging the mortgage might foreclose her case and cause injustice to be done. The court of equity is open to the defendant if she wishes to press her claim for subrogation, and there full opportunity for bringing in all evidence bearing on the point would be assured to both parties litigant and the danger of a decision on what might prove to be only a part of the facts would be avoided.

The only remaining point to be considered is the claim of the defendant that the demandant is estopped from asserting title. From anything in the record, or from any reasonable inference that might be drawn from what is contained in the record, we are unable to see anything which by way of estoppel, equitable or otherwise, would or could bar the demandant from assertion of her title to the one-third interest.

At the time when the demandant attempted to release her rights to the defendant under the deed of May 31, 1922, she did have a right in the property which, as far as the record shows, she honestly attempted to convey to the defendant. Her deed was ineffective, because she did not wait until the redemption period had expired on the levy and sale. It is our opinion that the demandant has full title to this one-third interest which she attempted to convey, unless she is barred under the principles of an equitable estoppel from maintaining against the defendant her right to this interest. The only thing that she did, as far as the record shows, was to sign and deliver a deed to the defendant. There is no evidence of any other act and no evidence of any word or statement. There is nothing to show that the demandant said anything, did anything, or held out any assurances or made any promises calculated to or tending to in any way influence or mislead the defendant. The record is entirely bare of any evidence bearing on that point, although it is argued by counsel. The demandant owed the defendant no duty of calling her attention to any conditions which might

render her deed void or ineffective, even if she knew of such conditions, and there is no evidence that she did know. On the other hand, if the defendant before receiving the deed had taken steps to ascertain through proper advice whether or not the demandant was in a position to give a proper deed, her present difficulties might have been unnecessary. If after receiving the two deeds and taking possession and doing whatever she did thereafter, in connection with the mortgage or otherwise, she had taken further steps to make certain of her rights, other difficulties might also have been prevented. We do not feel that the mere giving and delivery of a deed by demandant is in itself, accompanied by no more evidence than that disclosed by the record, even when combined with the fact that the defendant occupied the property claimed under her two deeds and eventually paid the mortgage, a sufficient exposition of facts to warrant this Court in saying that this demandant is equitably estopped from asserting her title to this one-third interest.

Parties having agreed that the value of improvements, admittedly judicious and proper, shall be ascertained by commissioners to be appointed by the Court at *nisi prius*, and that the tenant may file written claim to compensation for such improvements, and that the demandant may file written request for estimation of values of demanded premises at the time of the trial, if no improvements had been made, and, as under Sec. 10, Chap. 109, R. S. (1916), "the demandant may recover a specific part or undivided portion of the premises to which he proves title, although less than he demanded," the entry will be,

> *Judgment for demandant for one-third in common and undivided of the demanded premises. Case remanded for further proceedings in accordance with stipulations.*