FRED STANLEY STROUT *vs.* MARK I. POLAKEWICH.
WALTER B. STROUT *vs.* MARK I. POLAKEWICH.

Cumberland.    Opinion, August 4, 1942.

*Jacob H. Berman,*

*Edward J. Berman,*

*Sidney W. Wernick,* for the plaintiffs.

*Forrest E. Richardson,*

*John D. Leddy,* for the defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

WORSTER, J.   On exceptions.

Two actions were tried together. In one action, Fred Stanley Strout, a minor, by his next friend and father, Walter B. Strout, seeks to recover damages for personal injuries sustained in an automobile accident on a public highway, alleged to have been caused by the negligence of one Hunt, a minor under the age of eighteen years, while he was driving the defendant's automobile, in which said Fred Stanley Strout was riding as an invitee of Hunt. In the other action, Walter B. Strout seeks to

recover for expenses incurred and to be incurred for medical aid and treatment of his son, said Fred Stanley Strout.

The plaintiffs' actions are based on the provisions of R. S., Maine, 1930, Chap. 29, Sec. 35, which reads as follows:

"Every owner of a motor vehicle causing or knowingly permitting a minor under the age of eighteen years to operate such vehicle upon a highway, and any person who gives or furnishes a motor vehicle to such minor, shall be jointly and severally liable with such minor for any damages caused by the negligence of such minor in operating such vehicles."

A nonsuit was ordered in each case, and both cases are brought here on exceptions.

There was evidence from which a jury might have found that the accident was caused by Hunt's negligence; that there was no contributory negligence on the part of Fred Stanley Strout; and that the defendant knew that Hunt was under eighteen years of age. We do not understand counsel for the defendant to contend otherwise. But it is contended for the defendant that the nonsuits were properly ordered, because, it is claimed, the evidence presented for the purpose of establishing liability of the defendant under that statute was insufficient to warrant the submission of the cases to the jury. We think otherwise.

Fred Stanley Strout and Hunt were employed by the defendant as guides, to show visitors places of interest on a scenic tract in Freeport, called the Desert of Maine. A watchman was also employed on the premises. The defendant himself lived in Portland and commuted back and forth. For that purpose he used, during a part of the time, his Ford coupe, in which the boys were riding at the time of the accident. Once in a while the defendant's employees at the Desert used the same coupe to go on errands for the defendant, and before the watchman left, Hunt had used it twice for such a purpose.

On Monday or Tuesday preceding Friday, October 25, 1940, the watchman being absent, Hunt testified that the defendant

". . . asked me if I would stay there till the watchman returned, and that he was going to leave the coupe there for my use, and to keep the keys in my pocket when I wasn't using the car."

Hunt assented, and the keys to the coupe were given to him by the defendant. From that time until the ensuing Friday night, Hunt acted as guide in the daytime, and watchman at night. In the meantime the coupe was kept at the Desert when not in use, Hunt retaining the keys. It does not appear that the defendant drove the coupe at all during that time, or that he even asked for it or for the keys.

No meals were served at the Desert, and, without ever asking or obtaining any permission of the defendant other than that given as aforesaid, Hunt, with the knowledge of the defendant, used this coupe to go some distance for his meals, and twice used it to go home for clothing.

While Hunt was eating in a Freeport restaurant on Friday, October 25, 1940, he was requested by the defendant over the telephone to call for him at a service station in Freeport, and take him to the Desert. This Hunt did, and about six o'clock that night, accompanied by Fred Stanley Strout, drove the defendant from the Desert back to the service station in Freeport, and left him there. Then Hunt and Strout had their supper, after which they went back to the Desert. On their arrival there at about seven o'clock, they found that the night watchman had returned in their absence, and, Hunt testified:

"Well, everything seemed to be in control, and it had been cold that day, and I thought I might like some gloves to use the next day, so I asked Fred if he wanted to go to Brunswick with me."

Strout consented, and they left for Brunswick about 7:30 that evening, but on their arrival there found the stores closed,

and went to a moving picture theatre, after which they went to a restaurant, where Hunt drank two glasses of beer. Then, at Strout's suggestion that he might stay home if his folks were up, and that he might have some gloves there, they drove to his home in Topsham, but the lights were out, the house locked up, and Strout had no key, so they returned to Brunswick. About midnight they left to return to the Desert of Maine, and while on their way to that place the accident happened.

Apparently the defendant did not know that Hunt was going to Brunswick that night. Nothing was said about it, and it does not appear that Hunt decided to go until after the night watchman had returned.

Hunt admitted on cross-examination that it was a fair inference that he was not to use the coupe for his own pleasure; but the record does not disclose that the defendant expressly told him that he could not. And it is significant that at a conversation between Hunt and the defendant, about a week after the accident, the latter said nothing to the effect that Hunt had no right to take the coupe to go to Brunswick that night. And Hunt testified that at that conversation the defendant , "asked me if I was willing to forget everything."

The defendant now claims that the coupe was being used by Hunt at the time of the accident without his consent, and contends that proof of consent or permissive use by the defendant is essential to the maintenance of these actions.

In support of that contention he cites: *Union Trust Co.* v. *American Commercial Car Co.*, 219 Mich., 557, 189 N. W., 23; *Mooney* v. *Canier*, 198 Iowa, 251, 197 N. W., 625; *Maine* v. *James Maine & Sons Company*, 198 Iowa, 1278, 201 N. W., 20, 37 A. L. R., 161; *Seleine* v. *Wisner*, 200 Iowa, 1389, 206 N. W., 130; *Atwater* v. *Lober*, 233 N. Y. S., 309; *Fluegel* v. *Coudert*, 244 N. Y., 393, 155 N. E., 683; *Psota* v. *Long Island R. R. Co.*, 246 N. Y., 388, 159 N. E., 180, 62 A. L. R., 1163; *Chaika* v. *Vandenberg*, 252 N. Y., 101, 169 N. E., 103; *Arcara* v. *Moresse et al.*, 258 N. Y., 211, 179 N. E., 389; *Smith* v. *Tompkins*, 52 R. I., 434, 161 A., 221.

Those cases do hold that the owner is not liable for the negligent operation of his motor vehicle by another unless it appears that at the time of the accident it was being driven with the consent of the owner. And *Arcara* v. *Moresse et al.*, supra, goes so far as to hold that consent to go to one place cannot be construed as consent to go to another place, although it is there conceded that lack of consent could not be shown by proof of a mere deviation from the designated route.

But those cases are not decisive here. The statutes there construed require proof of such consent by the owner, or knowledge on his part of facts from which consent might be implied, as is plainly disclosed by a brief reference to such statutes.

The Michigan statute makes the owner liable for the driver's negligence only where it appears that the vehicle was being driven with "the express or implied consent or knowledge of such owner."

The Iowa statute requires it to appear that the car was "driven by consent of the owner."

The New York statute makes the owner liable if his motor vehicle was being operated in the business of such owner or otherwise, by a "person legally using or operating the same with the permission, express or implied, of such owner." And permission is here used in the sense of consent. *Atwater* v. *Lober*, supra.

And the Rhode Island statute imposes liability on the owner for the negligent operation by the user of the motor vehicle, only when it is operated with the consent of the owner, express or implied.

The statutes just mentioned are not limited to cases where the drivers of the automobiles are minors, whereas the Maine statute is limited to cases where the operator of the motor vehicle is a minor under eighteen years of age.

There are really two divisions in our statute.

The first division includes that class of cases where the owner of a motor vehicle causes or permits it to be operated by such a minor, thus making liability of the owner depend upon

proof of his consent to the operation of such vehicle on the highway by such minor, as held in the cases cited above.

It is, however, unnecessary to determine whether Hunt actually went to Brunswick that night for gloves to be worn while discharging his duties as an employee of the defendant, or whether the defendant expressly or impliedly consented to Hunt's use of the coupe for that purpose, within the meaning of that part of the statute just considered, if the case falls within the other provision therein.

It is also expressly provided in the statute that "any person who gives or furnishes a motor vehicle to such minor" shall be liable for damages caused by the negligent operation thereof on the highway by such minor. Liability under this clause is not made to depend upon proof that such minor was operating the motor vehicle at the time of the accident, with the consent of the owner, but rather upon the question whether or not the vehicle then used by such minor had been given or furnished to him by the person whose liability is sought to be established.

Apparently this part of the statute was added because the legislature mistrusted the judgment and sense of responsibility of minors under eighteen years of age, in the use of motor vehicles upon the highway. For that reason, those persons who were responsible for such use, by giving or furnishing such vehicles to such minors, are made liable for damages caused by the negligent operation of such vehicles on the highway by such minors. But whether or not that was the reason for the enactment of the statute as written, the fact remains that this clause was inserted in the statute, and must be construed as written.

It is unnecessary to determine whether the word "gives" was used by the legislature to indicate only those cases where presents of motor vehicles had been made to minors, or was used loosely to indicate a mere delivery of possession, because the word "furnishes" is also used. Now furnishes is used here in the sense of supply or provide. So one who supplies or provides such a minor with a motor vehicle comes within the meaning

of this part of the statute, although he did not consent to the use to which the vehicle was put by the minor.

In *Shrout* v. *Rinker et al.*, 248 Kan., 820, 84 P., 2d, 974, the phrase "gives or furnishes," as used in a statute similar to ours, except for the lower age limit, was considered by the court. It was there said: "The statute fixes the liability upon 'any person who gives or furnishes a motor vehicle to such minor.' " And the Court held that once the defendant permitted such minor to drive the motor vehicle, she brought herself under the terms of the statute, even although it appeared that the minor, after going to the place to which she was authorized to go, went also to another place, from which she was returning when the accident happened.

Was Hunt, at the time of the accident, furnished by the defendant with this coupe? That is a question of fact, and should have been submitted to the jury, under appropriate instructions from the court. It was error to grant the nonsuits.

The view we have taken of the cases renders it unnecessary to consider the other exceptions.

*Exceptions sustained in both cases.*

MURCHIE and MANSER, JJ., dissent.

## DISSENTING OPINION.

MURCHIE, J.   I am unable to concur in the opinion in these cases; and since it represents the first interpretation of the law now under consideration, it seems advisable that I state the reasons for my personal view that the construction declared makes the statute operative over a far more liberal field than was contemplated by the Legislature.

The statute construed, R. S. 1930, Chap. 29, Sec. 35, was originally enacted as P. L. 1929, Chap. 327, Sec. 10. It is quoted in the majority opinion, as is the language of the defendant, which it is held factually may support the plaintiffs' claims if jury judgment interpets that language as the opinion almost directs. It is applicable to the negligent operation of motor

vehicles by "minors" under eighteen years of age, that word being used hereafter with that limited meaning.

The two most fundamental rules for the construction of statutes are (1) that judicial interpretation shall give effect to legislative intention, *State* v. *Howard,* 72 Me., 459; *Lyon* v. *Lyon et al., Ex'rs.,* 88 Me., 395, 34 A., 180; 59 C. J., 948, Par. 568-(2a); 25 R. C. L., 960, Par. 216; and (2) that a statute which creates a liability unknown to the common law shall be strictly construed, 59 C. J. 1124 at 1126, Par. 665-(7a), and 1129, Par. 668-(8); 25 R. C. L., 1056, Par. 281; *Flynn* v. *The American Banking and Trust Company et al.,* 104 Me., 141, 69 A., 771, 19 L. R. A., N. S., 428, 129 Am. St. Rep., 378. The rule of strict construction is expressed by the writer of the text in Corpus Juris as requiring that any established rule of law changed by statute should be considered "no further abrogated than the clear import of the language necessarily requires." The text in R. C. L. says "clearly and necessarily requires." Chief Justice Emery in the *Flynn* case, supra, declared that when such a statute is "susceptible of more than one construction it should receive that imposing the lightest burden," which is to the same effect as the earlier statement of Mr. Justice Libbey in *Wing* v. *Hussey,* 71 Me., 185, that "no statute is to be construed as altering the common law, farther than its words import."

To determine legislative intention, the purpose sought to be accomplished by the Legislature should be given consideration; *State* v. *Howard,* supra, 59 C. J., 958, Par. 570-(2); 25 R. C. L., 970 at 971, Par. 223, and 1013, Par. 253; and the entire enactment construed, rather than a particular part thereof; *Campbell* v. *Rankins,* 11 Me., 103, 59 C. J., 995, Par. 595-(b); 25 R. C. L., 1004, Par. 246.

At common law one was liable for his own negligence, and for that of a servant in a limited field, but no more. The statute enlarges the earlier defined boundaries of agency law in the field of negligence. The Legislature attempted to delimit the boundaries of the enlarged field by the use of four definitive

words or phrases of control, two applicable to motor vehicle owners who caused or knowingly permitted its operation by a minor and two to any person (whether or not the owner of such a vehicle) who gave or furnished it to a minor.

The statutory words are "causing or knowingly permitting," and "gives or furnishes." At the outset it seems apparent that the careful phraseology of the statute, using changed forms of the two pairs of verbs, connotes some definite intention with reference to their meanings. "Causing or knowingly permitting" normally relates to one time or occasion, or to a particular class or kind of use. "Gives or furnishes" speaks also in present tense, but it would not strain construction to hold that it was ordinarily operative only where a vehicle was made available for the use of another with no particularity as to the time or kind of use.

The outstanding thing about the doublets is that each combines a word of definite import with one of wide signification. One cannot cause his motor vehicle to be operated without permitting its operation, even without knowingly doing so. One cannot give without furnishing. On the other hand, one may permit and not cause, or furnish and not give, in the common meaning of the latter word. In seeking to determine legislative intention, we face the problem as to whether there was a purpose to be served in contemplation of the legislative mind by the choice of words, or by their grouping and divergent form. There is an obvious distinction between "causing" and "knowingly permitting," and a corresponding one between "gives" and "furnishes." There must be implication of one in the fact that the definitive controls were paired. There can be no doubt that distinction was drawn between what might be done by the owner of a vehicle and some other person. Liability is not imposed by legislative mandate upon an owner by what his wife, or some other person, causes or knowingly permits; but under the all-inclusive interpretation of the four words of the statute "any person who . . . furnishes," it may well be that one can be held to have furnished who has authorized his wife

to permit or, without stretching imagination too far, who has merely failed to forbid his wife to permit.

Statutory words, unless technical, are to be construed according to their common meaning. R. S. 1930, Chap. 1, Sec. 6, Par. I. The dictionaries are not particularly helpful in searching out the intent properly inferable from the words "causing," "gives" and "furnishes," but they are convincingly so as to the word "permitting," because of the carefully expressed qualification thereon. The common meaning of "causing" is plain. Consolidating the definitions declared in three dictionaries, it involves initiative on the part of him who causes, best expressed in a secondary meaning noted in Funk & Wagnall's Standard Dictionary — "to compel (one to do something)." There, as in the Century Dictionary, "give" and "furnish" are declared to be synonymous, but the primary meaning of "give" is stated as delivering or handing over or as transferring title or possession, in either case gratuitously or without compensation. If we construe "give" so broadly that no transfer of title is involved, it is squarely synonymous with "furnish," and either or both would involve general availability to the donee of the thing given. The definitions of "give" in Webster are legion. "Furnish" is there defined somewhat restrictively — to supply or fit up (with what is wanted or necessary or proper), but there is support for the two concepts of the word on which emphasis is laid in the majority opinion — "to supply or provide."

So far as these words are concerned, there is no guide within the statute to indicate whether the intent was to cover the broadest reasonable scope, or otherwise, but that properly inferable from the word "permitting" is plain. Permit, unqualified, covers a wide range. According to Webster it carries a dual meaning, importing either express consent or failure to prohibit. The other authorities define it with like effect, without drawing so clear a distinction between affirmative allowance and failure to negate. Legislative intent to limit its effectiveness within the former and narrow field is shown by the

qualifying word "knowingly." The majority opinion reads that word out of the statute.

By curious coincidence, the facts furnish definite instances (1) when this defendant *caused* the minor to operate a motor vehicle, and (2) when he *knowingly permitted* such operation. The factual situation is clear. Among the employees of defendant, on property so isolated that the services of a watchman were essential, were the minor, a watchman, and others. Confronted, on the day when the defendant spoke the words quoted in the seventh paragraph of the majority opinion to the minor, with the emergency of the watchman's indefinite absence, the real purpose of the conversation was to secure the services of the minor as temporary watchman, in addition to his other duties. The reference to the car was incidental. It was maintained upon the property for business use. It had already been used twice by the minor for defendant's business purposes. It was so used by defendant's employees generally.

The minor was the principal witness for the plaintiffs. He freely and frankly admitted on cross-examination that he had no permission to use the car for pleasure; that it was not left with him for personal use; that there was no contemplation between him and the defendant that he should so use it; and that while he performed the duties of his regular employment and of watchman, he had a virtual 24-hour-a-day assignment with no time for pleasure riding. Working a 24-hour day where no meals were available, it was essential that he travel home and back occasionally to obtain sustenance and, perhaps, to change his clothing. Nothing could be plainer, as I view it, than that his authority to use the car was for those limited purposes only. Such is the clear import of the words used by the defendant, under all the circumstances. That they were so understood by the minor is manifest from his admissions, already enumerated, from his statement on redirect-examination that the reason he bought the gas and oil for the joy-ride he was taking when the accident litigated occurred was because the defendant had been "good enough" to let him use the coupe

"for his [the defendant's] work," and from the obviously artificial attempt to set up a business purpose as reason for the joy-ride. Had the explanation been true, it would have been clearly proper to use the defendant's gas and oil.

The interpretation declared ignores the rule requiring construction of any statute as a whole. The word "furnishes" is given so wide a connotation that just as it is impossible to give without furnishing, so it is equally impossible, so far as a motor vehicle owner is concerned, to either cause or permit its use without furnishing it. The intendment of the Act is taken as if the sole legislative control had been stated in the words *whoever furnishes*. This finds no support in legislative intention unless it is arbitrarily assumed that the long statutory recital of the limits of the new field of liability rests solely in a legislative tendency to verbiage. Such construction is impossible if recognition is given to the restriction which the word "knowingly" by any reasonable interpretation must impose upon the word "permitting." There is equivalent lack of support when resort is had to known purpose in seeking to determine intention, which is susceptible of rather definite measurement. It is common knowledge among members of our Courts, our Bar, and citizens generally, that with the advent of the automobile and its widespread use, the strict principles of agency law resulted in much damage through negligent operation of motor vehicles by the minor children of their owners without recovery of compensation. The situation was nationwide. It clamored for remedy. In some states reform was accomplished by judicial legislation adopting the "family use doctrine." This never became effective in Maine. *Farnum* v. *Clifford,* 118 Me., 145, 106 A., 344; *Pratt* v. *Cloutier,* 119 Me., 203, 110 A., 353, 10 A. L. R., 1434. In others legislative action imposed liability on the owners of motor vehicles for damages caused by any person operating by express or implied consent. In Maine and Kansas liability was limited to operation by minors and the application of the Act was defined by the words already discussed.

The principle that an entire legislative act should be considered in the construction of any part thereof requires that we refer back to P. L. 1929, Chap. 327, and in that Act, we find two sections dealing with the operation of motor vehicles by minors, Sections 9 and 10. The Act under consideration traces back to Section 10. The preceding section, which is the preceding section in the particular session law, points clearly to the fact that the right of control, as to whether minors should be permitted to become licensed motor vehicle operators, was vested in parent or guardian, if the minor had any such. It was necessary, if minors were not to be barred from all employment which involved the operation of motor vehicles, that provision be included authorizing the employer of a minor to assent to his licensing when there was no father, or mother, or guardian.

The majority opinion lays no emphasis on the employer-employee relationship but the complete picture of the legislation is of importance to demonstrate its purpose. The opinion reaches its result by the broadest possible interpretation of the word "furnishes." It cites no authority except a single Kansas case, hereafter referred to, the facts of which are clearly distinguishable from the present ones. It cites, only to ignore, a considerable line of cases decided under those statutes where the admeasurement of the enlargement of agency law is to be construed from the words "the consent of the owner . . . expressed or implied." To refer to a single one of those cases, *Smith* v. *Tompkins, 52* R. I., 434, 161 A., 221, the employer of a chauffeur, whose employment placed him in possession of motor vehicle and key, was not held to have impliedly consented to the operation of his motor vehicle when the chauffeur took friends for a ride. The case discloses that the defendant therein had expressly forbidden the chauffeur to use the vehicle except on defendant's business or under instruction from defendant's wife, and the jury verdict denying recovery to the plaintiff must have been based on factual finding either that implied consent was negatived or that no implied consent could

be assumed. The formula of words is unimportant, since in the present cases it is clear on the record that the minor about whom the issue revolves clearly understood that this defendant had given him no authority to use the car for personal pleasure.

The decision can find no support in the case *Shrout* v. *Rinker et al.*, cited in the majority opinion. There the accident litigated occurred on the very occasion when a minor was either furnished the family car or knowingly permitted to use it, to travel from home to a ball-game and return, the defense offered being that the return trip did not follow the exact course prescribed by the parent. Whether the case be considered to turn on the car having been furnished or merely that its use was knowingly permitted, the Court thought it necessary, or at least worth while, to mention not only its recognition that children often thought the longest way 'round the shortest way home, but that the purpose of the attempted limitation on the use of the car rested in time rather than course, because the car was wanted for family use immediately after the close of the ball-game.

I believe that proper construction of the statute would limit its application on the facts presented so that this defendant would be liable only if he might be held to have knowingly permitted the minor to operate the motor vehicle on the trip when the negligence occurred; that the evidence adduced in the cases would not justify a finding that he did so; that the evidence rulings, if assumed to be erroneous, were not prejudicial under such a construction of the statute; and that the mandate in each case should be

*Exceptions overruled.*