CHARLOTTE SWEET PRO AMI
*vs.*
ROBERT F. AUSTIN, D/B/A
AUSTIN'S GULF SERVICE

Cumberland.   Opinion, March 21, 1962.

*Peter N. Kyros,*
*Robert J. Melnick,* for plaintiff.

*John D. Leddy,*
*Richard D. Hewes,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WILLIAMSON, C. J.    This is an action by Charlotte Sweet, a minor, against Robert F. Austin, the operator of a filling station, to recover for injuries suffered in the collision of a car driven by her mother in which she was a passenger and a car driven by Fred Yerxa.    The case reaches us on appeal from the direction of a verdict for the defendant at the close of the plaintiff's case.

Our decision turns on the responsibility of the defendant for the negligence of Yerxa on one or more of these grounds:    (1) that the defendant was negligent in permitting and causing the operation of the car by Yerxa; (2) that Yerxa was the servant of the defendant at the time of the collision; and (3) that the defendant was liable under the statute for giving or furnishing a motor vehicle to Yerxa, a minor under the age of eighteen years.    R. S., c. 22, § 156.

Contributory negligence of the plaintiff is not in issue. The record amply discloses a jury question on the negligence of Yerxa.

We take the evidence with reasonable inferences in the light most favorable to the plaintiff in testing the propriety of the direction of the verdict for the defendant.    *Ward* v. *Merrill*, 154 Me. 45, 141 A. (2nd) 438.    A jury could find the following facts.

Charles Rice, 23 years of age, parked a 1951 Packard in the yard of defendant's filling station on Valley Street in Portland for a fixed monthly rental.    The precise ownership of the car, purchased by Rice and registered in the name of Mrs. Rice, his mother, is not material.    Rice plainly had full authority to use and to control the use of the car.

On the morning of the accident in February 1959, Rice requested his mother to ask Yerxa, who lived with her, to fix a flat tire on the Packard.    Yerxa was also informed of a spare set of car keys underneath the hood.    The tire used

to replace the flat was in the car trunk. Rice and his mother knew that Yerxa did not have a driver's license and could not drive.

Evidence of what took place at the filling station comes from statements by the defendant to the plaintiff's father.

"Q  Did you speak to Mr. Austin about the accident?

"A  Yes, I did.  I inquired all I could find in regard to the accident.

"Q  What did Mr. Austin say?

"A  He (Mr. Austin) told me that — the first inquiry, I asked Mr. Austin who was the owner of the car and he told me it was Mrs. Rice, and that they had made arrangements for parking facilities at his service station, and that on the morning of the accident that this Fred Yerxa had come up there to repair the flat tire and that he had asked Mr. Austin for the use of jacks and tools to enable him to repair the tire, and then following the repairs Mr. Austin told him that the car was in the way and would he please drive it out of the way so that he would have full access to his pumps and Yerxa had told him that the car would not start - -

MR. LEDDY: Object.

"Q  Just tell us what Mr. Austin said, please.

"A  This is all what Mr. Austin told me.  Mr. Austin told me that Fred Yerxa had told him the car wouldn't start; and then he asked Fred Yerxa to get in the car and he would push him to get it started so that he would be able to drive the car out of the way."

Shortly before noon the Packard with Yerxa at the wheel was pushed from the premises of the filling station by a truck operated by the defendant to and along Valley Street for an uncertain distance.  "Around noontime," in the

words of Mrs. Sweet, plaintiff's mother, she drove from Valley Street on D Street stopping at a stop sign at the intersection of D Street and St. John Street. Yerxa, accompanied by at least one other boy not known from the record to have been with him at the station, in proceeding along St. John Street and turning to his right into D Street, collided with the left side of the Sweet car.

Within a few minutes the police and the defendant were at the scene. The defendant told Yerxa he would push the car to the station. The police, however, would not permit Yerxa, who on inquiry had stated he had no license, to drive. The car was later towed away.

We turn to the grounds on which the plaintiff bases her case: First: We find no negligence on the part of the defendant in permitting or causing the operation of the Packard by Yerxa. For purposes of discussion we assume the defendant did so permit and cause the operation of the car. We shall later point out that such an assumption is not warranted.

As we have seen, the jury could have found Yerxa was 16 years of age, without a driver's license and without experience in driving, and that these facts were known to Rice and his mother. There is nothing in the record to indicate that such facts were known to the defendant when Yerxa was at the filling station, or that there was anything about Yerxa to indicate lack of eligibility for a license,[1] or lack of ability, or lack of a license. Yerxa was not a ten year old. He was the authorized agent of Rice to fix the flat and

---

[1] "No license shall be issued to any person under 15 years of age." R. S., c. 22, § 60, relating to operators' licenses in effect at the date of the accident. The statute has since been changed to provide that after September 1, 1960, ". . . no operator's license shall be issued to any person under 17 years of age . . ." without a certificate of successful completion of a driver education course. R. S., c. 22, § 60-A, enacted Laws 1959, c. 221, not applicable, however, to any person under 17 years of age holding a valid license issued prior to September 1, 1960.

to have the keys, and thus to have possession and control of the car. His authority was limited, to be sure, and did not include operating the car.

Yerxa, however, was apparently authorized to possess and control the car at the filling station. Of great significance under the circumstances is the fact that Rice entrusted the keys to Yerxa, and thereby the power to operate the car.

We are not concerned with liability of a parking lot proprietor to an owner for placing a car in the hands of an unauthorized person. Here the issue is whether the defendant failed to use due care in permitting and causing the operation of the Packard by Yerxa. The defendant did no more than assist a young man competent in the eyes of Rice to fix the flat and to have the keys in starting the car. He could reasonably believe that Rice was sending a man and not a child unfitted to perform the common act of driving an automobile.

In *Kelley* v. *Thibodeau*, 120 Me. 402, 115 A. 162, cited by the plaintiff, the owner of an automobile was held liable for permitting an inexperienced driver to drive his automobile in the owner's presence and under his control. The case is distinguishable from the case at bar by the knowledge of the owner of the driver's inexperience. If the defendant had known or should have known the facts of Yerxa's inexperience and lack of license, there would have been a jury issue whether negligence of the defendant was a proximate or an efficient cause of the injury. There was no failure to make a reasonable investigation of Yerxa's ability to drive. *Anderson* v. *Driverless Cars, Inc.*, 124 So. 312, cited by the plaintiff, is not applicable on the facts. See also *Gulla* v. *Straus* (Ohio), 93 N. E. (2nd) 662; Restatement, Torts § 390, comment b and illustrations; 5A Am. Jur. *Automobiles and Highway Traffic*, §§ 580, 581; annotation 36 A.L.R. (2nd) 735, on incompetent driver-donor's liability.

A jury would not be warranted in finding that there were limitations upon Yerxa's ability to drive, which the defendant should have ascertained in the exercise of reasonable care and prudence.

Second: The evidence does not warrant a verdict grounded on "respondeat superior." The defendant was under no obligation to leave the Packard parked at a place in the yard where it interfered with the use of the pumps. He could have moved the car within the yard without objection. Cf. *Howard* v. *Deschambeault*, 154 Me. 383, 148 A. (2nd) 706. He chose not to move the car himself, but to request Yerxa to do so. For reasons unknown in the record Yerxa took off to St. John Street.

To say that Yerxa was the servant or agent of the defendant is to deny the substance of the situation. Yerxa was not an employee of the station. He was not under the defendant's control and direction. If Yerxa had refused to move the car, the defendant could not have discharged him or disciplined him. Yerxa was requested to move the car, not ordered to do so. He was not a borrowed servant. To hold that the relationship of master and servant exists in the situation here disclosed would place an intolerable burden of responsibility upon the business in which the defendant was engaged. See 5 Blashfield Cyclopedia of Automobile Law and Practice §§ 2942, 2943.

If we assume that liability under the doctrine of respondeat superior rests upon the defendant for the acts of Yerxa at the station, there yet remains a flaw in the evidence fatal to the plaintiff's case. We cannot from the record trace the course of the Packard from an indefinite point on Valley Street to which it was pushed by the defendant to the place of the collision on St. John Street. Did Yerxa go on a "frolic of his own"? In driving the car did he go beyond the bounds of his authority (which for this purpose

we assume), namely, to move the car from near the pumps to another part of the filling station yard? Why, for this purpose, did he drive from Valley Street to St. John Street? We do not know the distance traveled or within broad limits the length of time during which Yerxa was driving the car. It is significant that Rice, in a written statement taken for the defendant and introduced in evidence by the plaintiff, said, "When I left the car I remember I had about ¾ of a tank of gas, and after the accident the tank was empty." Yerxa, at the time of the accident was accompanied by at least one boy. There is no mention that anyone was with him at the station.

Yerxa, it may be noted, at the time of trial was in the armed services and did not testify. It would be purely guess or conjecture to say that Yerxa was the servant of the !defendant at the time of the collision, or that if he had been on a "frolic of his own," he had then returned to the defendant's service.

A finding for the plaintiff on this point could not stand. "The burden of proof is upon the plaintiff to prove the agency and the scope thereof. It cannot be presumed." *Stevens* v. *Frost*, 140 Me. 1, 7, 32 A. (2nd) 164; *Good* v. *Berrie*, 123 Me. 266, 122 A. 630; *Robertson* v. *Armour Co.*, 129 Me. 501, 152 A. 407; *Leek* v. *Cohen*, 141 Me. 18, 38 A. (2nd) 460; *Pearl* v. *Sand & Gravel Co.*, 139 Me. 411, 31 A. (2nd) 413.

Third: We conclude that the defendant did not "give(s) or furnish(es) a motor vehicle" to Yerxa within the meaning of R. S., c. 22, § 156, which reads:

> "Every owner of a motor vehicle causing or knowingly permitting a minor under the age of 18 years to operate such vehicle upon a highway, and any person who gives or furnishes a motor vehicle to such minor, shall be jointly and severally liable with such minor for any damages caused by

the negligence of such minor in operating such vehicle."

"To give or to furnish" are not the equivalent of "to permit" or "to not object to the use of." The words "give" and "furnish" are words of action based upon at least a claimed authority. The defendant furnished nothing in the sense of supplying or providing. *Strout* v. *Polakewich,* 139 Me. 134, 27 A. (2nd) 911. If he had delivered the parked car into the possession of X, having no connection with Rice or his mother, we might have evidence on which to find a furnishing. In this instance, as we read the record, Yerxa, armed with authority to fix the flat tire and with the car keys, effectively had possession of the parked car. In the reasonable belief of the defendant, Yerxa was in the car and at the wheel for Rice who had parked the car at defendant's filling station.

In *Strout* v. *Polakewich, supra,* whether a car was "furnished" under the statute was held to be a question for the jury and exceptions to a nonsuit were sustained. The jury might have found that Hunt, known to the defendant to be a minor under the age of 18 years, was employed by the defendant as a guide at the Desert of Maine, and that the defendant left his car with Hunt for the latter's use.

In *Strout* there was a positive act by the defendant owner, i.e., a "furnishing." In the case at bar, the defendant, not the owner, did no more than request Yerxa to move the car and assist him in starting it. *Smith* v. *Moroney* (Ariz.), 282 P. (2nd) 470. Other cases arising under like statutes are: *Shrout* v. *Rinker* (Kan.), 84 P. (2nd) 974; *Lowder* v. *Holley* (Utah), 233 P. (2nd) 350; *Falender* v. *Hankins* (Ky.), 177 S. W. (2nd) 382. See also *York* v. *Day's, Inc.,* 153 Me. 441, 140 A. (2nd) 730.

In holding that the verdict was properly directed, we in no way express an opinion upon the responsibility, if any,

of Rice or his mother under the circumstances. We direct our attention only to alleged liability of the defendant filling station operator.

The entry will be

*Appeal denied.*