**YORK INSURANCE COMPANY OF MAINE f/k/a Commercial Union York Insurance Company as subrogee of Madison Motel Corp. d/b/a Madison Motor Inn, Madison Motel Corp. d/b/a Madison Motor Inn, Richard Theriault and Anita Theriault, Plaintiffs**

v.

**James L. SCHULTZ and Network Engineering Technologies, Inc., Defendants**

No. CIV. 03–27–P–C.

United States District Court,
D. Maine.

Feb. 25, 2004.

William C. Nugent, Portland, ME, Kevin J Hughes, Sean P O'Donnell, Cozen & O'Connor, Philadelphia, PA, for York Insurance Company of Maine.

Michael K. Martin, Petruccelli, Martin & Haddow, LLP, Portland, ME, Paul R. Dumas, Jr., Law Office of Paul R. Dumas, Jr, LLC., Mexico, ME, for Madison Motel Corp., Anita Theriault, Richard Theriault.

Kenneth D. Pierce, Monaghan, Leahy, Hochadel & Libby, Portland, ME, for James L. Schultz.

Martha C. Humphrey H.N. Johnson, Friedman, Gaythwaite, Wolf & Leavitt, Portland, ME, for Network Engineering Technologies Inc.

## MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT NETWORK ENGINEERING TECHNOLOGIES' MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Senior District Judge.

Plaintiffs seek recovery for property and economic damage caused by a fire that damaged the Madison Motor Inn on Friday, May 10, 2002. Plaintiffs claim that Defendant James L. Schultz negligently caused the fire while smoking in bed. At the time of the fire, Mr. Schultz was an employee of Defendant Network Engineering Technologies, Inc. ("NET"). Plaintiffs also assert claims against NET for vicarious liability for Mr. Schultz's negligence pursuant to the doctrine of *respondeat superior* and for NET's negligence in hiring, supervising, and retaining Mr. Schultz and in entrusting to Mr. Schultz a motel room reserved and paid for by NET. *See* Complaint of York Insurance Company f/k/a Commercial Union York Insurance Company ¶¶ 17–20 (negligence *respondeat superior* and negligent hiring, supervising, and retention); Complaint of Plaintiff Madison Motel Corporation d/b/a Madison Motor Inn ¶¶ 13–16 (negligence *respondeat superior* and negligent hiring, supervising and retention); Amended Complaint of Plaintiffs Richard and Anita Theriault ¶¶ 13–18 (negligence *respondeat superior;* negligent hiring, supervising, and retention; and negligent entrustment). Now before the Court is Defendant NET's Motion for Summary Judgment on all claims. *See* Docket Item No. 30.

### I. FACTS

This Court's jurisdiction is based on diversity of citizenship. Plaintiffs are either Maine corporations or citizens of Maine. Defendant NET is a Wisconsin corporation with its principal place of business in Middleton, Wisconsin. Defendant James L.

Schultz is a resident of West Virginia. NET had a contract to do work at the Wal–Mart store being constructed in Rumford, Maine. NET's project at the Rumford Wal–Mart involved installation of voice and data cable as well as installation of software, video cards, switchers, routers and dial backup. After Dean Whitlow, NET's lead technician, notified NET that he was taking another job, NET found itself in need of a technician to supervise the installation of the cable and network at the Wal–Mart project in Rumford, Maine. Before leaving, Mr. Whitlow recommended James L. Schultz, a resident of West Virginia, as his replacement.

A NET employee in its Wisconsin office, Steven Steffes, telephoned Mr. Schultz in West Virginia to discuss his qualifications and determine if he was interested in the Rumford project. After a couple of telephone conversations, Mr. Steffes hired Mr. Schultz to finish the Rumford project, and both men expected that Mr. Schultz's employment with NET would continue after the Rumford Wal–Mart project was completed. Thereafter, an employment application was sent to Mr. Schultz in West Virginia. In addition, Mr. Schultz was told that Mr. Whitlow would deliver NET's truck, computer, cellular telephone, credit card, and some cash to him in West Virginia. Mr. Schultz was instructed that after the NET equipment was delivered, he should immediately drive to Maine and check into a room at the Madison Motor Inn that had been reserved and paid for by NET. While in Maine, Mr. Schultz's reporting responsibilities were to NET in Wisconsin, and his supervisor was located in Wisconsin.

Mr. Schultz arrived in Maine on Sunday, May 5, 2002, checked into room 30 of the Madison Motor Inn, and reported to work at the Rumford project on Monday, Tuesday, and Wednesday morning. On Wednesday afternoon, Thursday, and Friday,

Mr. Schultz consumed alcohol and remained in room 30 of the Madison Motor Inn. Mr. Steffes made several attempts to contact Mr. Schultz from the Wisconsin office. At approximately 4:00 p.m. on Friday, May 10, 2002, a fire started in the room Mr. Schultz occupied. The fire caused substantial property and economic damage.

## II. DISCUSSION

### A. Choice of Law

■ The parties disagree about which state's law should be applied to Plaintiffs' claims against NET. NET argues that Maine law applies to Plaintiffs' claims and Plaintiffs contend that Wisconsin law should apply. Both Maine and Wisconsin recognize Plaintiffs' causes of action against NET for Mr. Schultz's negligence pursuant to the theory of *respondeat superior* and for negligent entrustment. *See, e.g., Sweet v. Austin*, 158 Me. 90, 179 A.2d 302 (1962)(negligent entrustment); *DiCentes v. Michaud*, 1998 ME 227, ¶ 11, 719 A.2d 509, 513 (Me.1998) *(respondeat superior); Halverson by Boles v. Halverson*, 197 Wis.2d 523, 529–30, 541 N.W.2d 150, 152–53 (Wis.App.1995) (negligent entrustment); *Rogers v. City of Oconomowoc*, 16 Wis.2d 621, 628, 115 N.W.2d 635, 639 (Wis.1962)(*respondeat superior* ). The same cannot be said for Plaintiffs' claims for negligent hiring, supervising and retention. While Wisconsin has recognized the tort of negligent hiring, supervision and training, *see Miller v. Wal–Mart Stores, Inc.*, 219 Wis.2d 250, 274, 580 N.W.2d 233, 243 (Wis.1998), Maine law is not so clear on the issue, *see Mahar v. StoneWood Transport*, 2003 ME 63, ¶ 10, 823 A.2d 540, 543 (Me.2003) (Maine has "not yet recognized the independent tort of negligent supervision of the employee") *but see Dexter v. Town of Norway*, 1998 ME 195, ¶ 10, 715 A.2d 169, 172 (Me.1998)(permitting

claim for negligent hiring of a contractor). Therefore, prior to determining whether there are issues of fact on Plaintiffs' claims against NET, the Court must determine which state's law is applicable with respect to Plaintiff's tort claims against NET.

■ A federal district court sitting in diversity, as this Court is in this case, must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Maine applies the "most significant contacts and relationships" test to choice-of-law questions for tort claims, *Flaherty v. Allstate Ins. Co.*, 2003 ME 72, ¶ 16, 822 A.2d 1159, 1165–66 (Me.2003), as stated in the Restatement (Second) of the Law of Conflicts. The Restatement sets forth factors for determining which state has the most significant relationship to the persons and events relevant to the claim for negligent hiring and supervision:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF THE LAW OF CONFLICTS § 145 (1971). The Court should evaluate these contacts "according to their relative importance with respect to the particular issue." *Id.*

Applying these considerations, along with the considerations found in section 6 of the Restatement,[1] the Court concludes that Wisconsin has the most significant relationship with the persons and events relevant to the issues of liability for negligent hiring and supervision. The damage to the Madison Motor Inn and the conduct causing the damage occurred in Maine. Plaintiffs are either Maine corporations or citizens of Maine. NET is a Wisconsin corporation with its principal place of business in Middleton, Wisconsin. Defendant James Schultz is a resident of West Virginia. However, Plaintiffs' claims against NET all have at their heart the employment relationship between NET and Mr. Schultz. Thus, the place where the injury occurred and the conduct causing the injury are less significant than the place of business of the parties and the place where the relationship is centered.

Taking the relevant section 6 factors into consideration, Wisconsin has a more significant contacts and interest in the claims that relate to the Defendants' employment relationship. First, all communication relating to NET's hiring of Mr. Schultz originated in NET's home office in Wisconsin. Mr. Steffes, the NET employee who hired and supervised Mr. Schultz, lives and works in Wisconsin. Mr. Steffes made at least two phone calls from Wisconsin to Mr. Schultz in West Virginia to discuss his qualifications and the position with NET. All employment negotiations took place by telephone communication between Wisconsin and West Virginia. Mr.

1. The relevant section 6 factors are:
(2) [T]he factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Restatement (Second) of the Law of Conflicts § 6 (1971).

Schultz was hired for an indefinite duration, and both parties intended the employment relationship to continue once the job in Maine was complete. While in Maine, Mr. Schultz's reporting responsibilities were to NET in Wisconsin, and his supervisor was located in Wisconsin. After Mr. Schultz accepted the position and agreed to go to Rumford, Maine to complete NET's project there, Mr. Steffes sent Mr. Schultz an employment application package from Wisconsin. After Mr. Schultz arrived in Maine, Mr. Steffes made several attempts to contact Mr. Schultz from the Wisconsin office.

The employment relationship between Mr. Schultz and NET is centered in Wisconsin. While Maine has a considerable interest in determining the law applicable to Mr. Schultz's liability in the case, its interests in influencing the employment relationship between Mr. Schultz and NET is nominal. Wisconsin, on the other hand, has a strong interest in governing the relationship between Wisconsin employers and their employees. Accordingly, the Court will apply the law of Wisconsin to determine whether NET is liable for any of Plaintiffs' tort claims.

## B. Summary Judgment

In this case, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that Defendants are "entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmov-

ing party.'" *Navarro v. Pfizer Corp.,* 261 F.3d 90, 93–94 (1st Cir.2001) (quoting *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995)). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court will review the record in the light most favorable to the nonmoving party and provide that party with the benefit of all reasonable inferences in its favor. *See Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 5 (1st Cir.2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.,* 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted).

After a thorough review of the factual record and the argumentation of the parties, the Court concludes that there are issues of fact which prevent granting summary judgment in favor of NET on all claims. On Plaintiffs' claims for negligent hiring, supervision, and retention and negligent entrustment, the Court finds that there are material issues of fact, *inter alia,* as to whether NET breached its duty of care when it hired Mr. Schultz and sent him to Maine to complete the job at the Rumford Wal–Mart. With respect to Plaintiffs' claims against NET for negligence pursuant to the doctrine of *respondeat superior,* the Court finds that there are material issues of fact, *inter alia,* as to whether Mr. Schultz was acting within the scope of his employment at the time the fire started.

Accordingly, it is **ORDERED** that Defendant Network Engineering Technologies' Motion for Summary Judgment be, and it is hereby, **DENIED**.