Strafford
No. 6752

NORMAN POLONSKY

v.

A. GRAHAM McILWAINE & a.

July 19, 1974

*Shaines, Madrigan & McEachern* and *Sanford Roberts (Mr. Roberts* orally) for the plaintiff.

*Joseph P. Nadeau* and *William B. Cullimore (Mr. Cullimore* orally) for the defendants, A. Graham and Roberta McIlwaine.

LAMPRON, J.   Bill in equity by the seller seeking specific performance by the purchasers of an agreement pertaining to certain real estate on Dover Point Road in Dover. Hearing before *Morris,* J., resulted in certain findings and rulings and a decree ordering specific performance by the defendant Graham. By agreement the bill was dismissed against his wife, the defendant Roberta. There was also a verdict against Graham for $250, the balance due on the purchase price of certain personal property. Defendant's exceptions to the trial court's rulings admitting and excluding evidence, and to its granting and denial of certain requests for findings and rulings were reserved and transferred. Defendant's main contentions are that the trial court erred in failing to find overreaching by the plaintiff in his dealings with the defendants and also in excluding this issue from consideration in arriving at its decree of specific performance.

The land in question consisted of approximately eight acres with some fruit trees and a hundred feet of frontage on the Spaulding Turnpike. There was a two-story structure consisting of a bedroom and a living room or "sun parlor" on the upper level and a kitchen and bathroom with a shower, toilet and sink on the lower level. It was serviced by electricity, city water and a septic system. It resulted from plaintiff's conversion, not all completed, of a camp on the premises. Plaintiff advertised

it for sale in a local newspaper. In response thereto the defendants went to the property on July 30, 1971. The plaintiff showed them around and he testified that the defendants also looked at the property by themselves. After about one and a half hours the parties entered into and signed a purchase and sale agreement.

The contract reads in part as follows: "Buyer Graham McIlwaine agrees to pay purchase price $16,600.00 ... less deposit of $200.00 ... from seller, Norman D. Polonsky. Buyer will present seller cash of $10,000.00 ..., within 10 days, balance due $6,300.00 .... Property to be delivered on clear title located at 171 A Dover Point Road." On August 5th the parties agreed to the sale of certain personal property on the premises for $500 of which $250 was then paid. It was agreed that the purchasers could enter and perform work on the property immediately, which they did. They also deposited $10,000 in a Maine bank which approved a mortgage of $6,300 on the property. About 3 weeks after the purchase agreement the defendants decided not to go through with it because in a rainstorm which took place while they were installing tile in the kitchen "about an inch of water" covered the floor. They notified the plaintiff of their decision.

The plaintiff was about 48 years of age at the time of the agreement and had owned this property about two years during which he had lived in the building. He had previously owned 3 or 4 parcels of property and had "started" a few restaurants. Graham McIlwaine was 22 at the time and was entering as a senior at the University of New Hampshire from which he received a B.S. degree in mechanical engineering the following June. He owned a two-apartment dwelling purchased in November 1970 but lived in a rented apartment at the time. His wife Roberta was 19 years of age.

The defendants testified that during the conversation preceding the signing of the agreement, plaintiff represented that he had been approached by a Massachusetts developer; that the property was suitable for subdivision; that many persons were interested in it; and that a professor from the university was coming back the next day

and "probably" or "maybe" would buy the property. Defendants also testified that they understood that if an agreement was not signed immediately the property would be sold the next day. They also said that plaintiff represented to them that certain water stains in the basement were the result of the defrosting of a refrigerator.

Plaintiff denied making representations about a developer or a professor from the university or any misrepresentation about the value of the property. He admitted telling defendants that many people were interested in it and about the water stains, both being true. He further testified that the plaintiffs must have observed the state of completion of the building when they inspected it before the agreement and that they told him "they wanted it and wanted it very badly and it was something that they always wanted."

Plaintiff testified that he paid $5,000 for the property in 1969 and moved what was then a cabin onto a foundation. He installed electricity in it, a septic system, added a room or porch 22 feet by 14 feet and made a bathroom with a shower, sink and toilet. He testified that there might have been "a little dampness" in the kitchen but no water problem. A real estate agent who appraised the property for the defendants placed a value of $4,100 on the building and $4,000 on the land. He testified that it was assessed in 1970 for $5,930. He also stated that in his opinion it could not be subdivided profitably. The trial court excluded testimony offered by the defendants through another real estate agent that plaintiff listed the property with her after the defendants refused to purchase it at an asking price of $15,500 and agreed to accept $12,000 or any good offer and that it was not sold. This evidence was offered to show that the agreed price between the plaintiff and the defendants was unconscionable. The court in its discretion could properly exclude this evidence on the ground that under the circumstances its probative value was outweighed by the time consumption which it would engender if admitted. *Reconstruction & c. Corp. v. Faulkner*, 101 N.H. 352, 362, 143 A.2d 403, 410 (1958); C. McCormick, Evidence § 185, at 440-41 (2d ed. E. Cleary 1972).

The trial court found that the plaintiff probably made the representations about the Massachusetts developer; the suitability of the property for development; and the fact that the stains were caused by the defrosting. The court also found that Roberta had no experience in real estate; that plaintiff did; that the defendants understood that if the agreement was not signed immediately the property would be sold the next day; and that the sale price "was more than twice the value of the property 'as appraised'." The court denied defendants' requests for findings that the plaintiff made the representation about the professor from the university coming the next day to buy the property; that Graham had no experience in real estate purchasing; and that the plaintiff dominated the first meeting of the parties and overpowered the will of the defendants.

It is well established law that if plaintiff's conduct in obtaining a contract "has been unconscientious, inequitable or characterized by bad faith, a court of equity will refuse him the remedy of specific performance." 2 J. Pomeroy, Equity Jurisprudence 400 (5th ed. 1941); *Gulf Oil Co. v. Rybicki*, 102 N.H. 51, 54, 149 A.2d 877, 880 (1959). However, it is equally well settled that it is the province of the trial court to resolve the contradiction in the testimony presented. *Plimpton v. Theos*, 113 N.H. 651, 312 A.2d 686 (1973).

By its findings, rulings and decree the trial court concluded that there was no overreaching or other unconscionable conduct by the plaintiff which would prevent the granting of his prayer for specific performance. The evidence supports this result, and we find no error in the court's consideration thereof. As the record does not require a ruling by this court that a contrary result should have been reached by the trial court, defendant's exceptions are overruled.

*Decree affirmed.*

All concurred.