2010 ME 44

**STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPANY**

v.

**Pramodh KOSHY et al.**

**Enterprise Rent–A–Car Company of Boston, Inc.**

v.

**Pramodh Koshy et al.**

Supreme Judicial Court of Maine.

Argued: April 15, 2009.

Decided: May 25, 2010.

654

James B. Haddow, Esq. (orally), Laura H. White, Esq., Petruccelli, Martin & Haddow, LLP, Portland, ME, for Pramodh Koshy.

William J. Kelleher, Esq., Daniel I. Billings, Esq. (orally), Marden, Dubord, Bernier & Stevens, Waterville, ME, for State Farm Mutual Automobile Insurance Company.

David P. Silk, Esq. (orally), Susan Rockefeller, Esq., Curtis Thaxter Stevens Broder & Micoleau LLC, Portland, ME, for Enterprise Rent–A–Car Company of Boston, Inc.

James D. Poliquin, Esq. (orally), John R. Veilleux, Esq., Matthew T. Mehalic, Esq., Norman, Hanson & DeTroy, LLC, Portland, ME, for Scandent Group, Inc. and Scandent India.

John J. Wall, Esq., Kenneth D. Pierce, Esq., Erica M. Johanson, Esq. (orally), Monaghan Leahy, LLP, Portland, ME, for Pramodh Koshy.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.*

SAUFLEY, C.J.

[¶ 1]   These related appeals center on a dispute regarding the ultimate responsibility for payment of damages arising out of a serious automobile accident in which the driver of a rented car was at fault. The parties' challenges to several judgments of the Superior Court (York County, *Fritzsche, J.*) require us to address the varying responsibilities of the rental company, the corporate renter, the individual employee who signed the rental agreement on behalf of the corporate renter but was not in the car at the time of the accident, and the insurer of that employee's personal vehicle. We vacate the judgments and remand for further proceedings.

## I.   PROCEDURAL HISTORY

[¶ 2]   The two court proceedings before us today[1] arose from an accident involving a car that was owned by Enterprise Rent–A–Car Company of Boston, Inc., and rented from Enterprise in New Hampshire by Pramodh Koshy for use by other employees of Koshy's employer, Scandent Group, Inc.[2]  A Scandent employee, whose full name is Ranjini, caused the accident when she was driving the car in Maine.

[¶ 3]   Individuals injured in the accident brought a tort action against Ranjini, Scandent, and Enterprise into which Koshy and several insurers were implead-

---

* Clifford, J., sat at oral argument and participated in the initial conference while he was a Justice, and, on order of the Chief Justice, was authorized to continue his participation in his capacity as an Active Retired Justice.

1.  Although the two appeals were separately briefed and argued, we address them in this single opinion because the facts and issues are related.

2.  At least one of the other employees in fact worked for Scandent Network Private, Limited, but we use the name Scandent to refer to the related Scandent entities collectively because the allocation of liability between Scandent entities is not presently at issue.

ed. While this tort action was pending, State Farm Mutual Automobile Insurance Company, the insurer of Koshy's personal vehicle, brought an action seeking a declaratory judgment that Koshy's personal automobile insurance policy with State Farm did not cover the accident and State Farm had no duty to indemnify Koshy. State Farm moved for summary judgment before the tort case was concluded, and the parties filed statements of material facts. *See* M.R. Civ. P. 56(h). State Farm did not challenge its responsibility to defend Koshy. The court denied Koshy's motion to stay the declaratory judgment action pending the outcome of the tort case.

[¶ 4] In the tort action, a settlement was reached with the injured individuals, whom Enterprise paid in full. In the same proceeding, Enterprise sought a determination from the court that the automobile rental agreement signed by Koshy required Scandent and Koshy to indemnify Enterprise for the full amount paid on the settlement.

[¶ 5] The Superior Court concluded that Scandent was not liable to indemnify Enterprise pursuant to the rental agreement. Enterprise appeals from that summary judgment. As to Koshy, the individual employee who signed the rental agreement on Scandent's behalf, the court concluded that the indemnification provision in the car rental agreement did bind him. Koshy appeals from that summary judgment.

[¶ 6] In the separate declaratory judgment action, the court concluded that Koshy's personal automobile insurance through State Farm did not cover the claim at issue. Koshy appeals from that summary judgment in favor of State

Farm. Koshy also appeals from the denial of his motion to stay the declaratory judgment proceedings until issues of liability were resolved in the tort action.

[¶ 7] The end result of the settlement and rulings of the court is as follows. The injured parties at issue here [3] have received full payment for their damages. The driver at fault has not been made responsible for payment of those damages in the proceedings. The corporation that rented the car for its employees' use, Scandent, has been held not to be responsible for any part of the damages. Koshy, who rented the car on behalf of Scandent, has been held to be personally responsible to fully indemnify the car rental company, and the court ordered him to pay $1,096,438.50 plus interest to Enterprise pursuant to the indemnification provisions of the rental agreement. Koshy's personal automobile insurance, provided by State Farm, has been held not to cover the event in question.

## II. SUMMARY OF THE OUTCOME OF THE APPEALS

[¶ 8] After considering the issues raised on appeal, we conclude that Scandent was not entitled to summary judgment on the indemnification claim because the rental agreement bound Scandent as an undisclosed principal acting through its agent, Koshy, in executing the agreement. We also conclude that the unconscionability provisions of New Hampshire's Uniform Commercial Code, N.H.Rev.Stat. Ann. § 382–A:2A–108 (1994), may govern the enforceability of the indemnification provisions of the car rental agreement and that the question of unconscionability must be decided on remand. We therefore vacate

**3.** Another person injured in the accident commenced a separate proceeding, which is not addressed in this opinion.

the summary judgment for Scandent against Enterprise and for Enterprise against Koshy, and we remand for further proceedings.

[¶ 9] We also vacate the denial of Koshy's motion to stay the declaratory judgment proceeding and remand with instructions that the matter be decided only after a final judgment has been entered in the dispute between Enterprise, Koshy, and Scandent.

## III. FACTUAL BACKGROUND

[¶ 10] The basic facts are not in dispute. An automobile accident occurred in Saco in 2003, involving a car that was owned by Enterprise, rented by Koshy, and driven at the time by Ranjini, who eventually pleaded guilty to a charge of driving to endanger.

[¶ 11] Koshy had rented the car at the behest of his employer, Scandent, for purposes of providing a means of transportation to Ranjini and other temporary employees of Scandent who were temporarily living in Portsmouth, New Hampshire. The car was rented for the temporary employees' personal and business use, and Scandent Group reimbursed Koshy for the cost of renting the car. Scandent agrees that Koshy was acting upon Scandent's request.

[¶ 12] The rental agreement was executed at Enterprise's Portsmouth, New Hampshire, rental office. The back page of the agreement contained a provision that the renter would indemnify the owner, Enterprise, for liabilities arising from use of the vehicle:

**BODILY INJURY AND PROPERTY DAMAGE RESPONSIBILITY:** Owner provides no BODILY INJURY or PROPERTY DAMAGE LIABILITY INSURANCE or coverage to renter or any other operator or user for bodily injury or property damage to renter, operator, user, passengers, or any third party. Renter's insurance applies. Renter represents and warrants that they have and will maintain in force during the term of this rental agreement, BODILY INJURY and PROPERTY DAMAGE LIABILITY INSURANCE for renter, other operators, users, passengers and third parties equal to the financial responsibility limits required by the applicable Motor Vehicle Financial Responsibility Laws of the state in where the vehicle is operated or used. Renter agrees to defend, indemnify and hold Owner harmless from any claims, liabilities, costs and expenses arising from renter's use, operation or possession of the rented vehicle. Renter assumes full responsibility for any damage to or destruction of property transported by and in the rented vehicle. If there is other valid and collectible automobile liability protection or insurance on any basis available to renter or any other person, and such protection or insurance on any basis available to renter or any other person, and such protection or insurance satisfies the financial responsibility laws, then no liability protection is afforded by owner. However, if renter is in compliance with the terms and conditions of this agreement, and if owner is determined by law to provide liability protection to any renter or authorized driver, such liability protection shall be limited to the minimum financial responsibility limits of the state in which the vehicle is operated.

The agreement also contained a separate indemnification provision that made the renter responsible for indemnifying Enterprise from liabilities incurred as a result of the operation of the rental car:

RENTER'S INDEMNITY PROVISION: Upon demand from Owner, Renter agrees to defend, indemnify and

hold Owner harmless from all losses, liabilities, damages, injuries, claims, demands, costs, and expenses incurred by Owner in any manner from this rental transaction or from the use, or operation of the rental car by any party, including claims of, or liabilities to, third parties, and, agrees to present a claim to their insurance carrier for all such expenses. If Renter has no insurance to cover such events or losses, Renter agrees to pay Owner for such losses.

Although Koshy had the option to obtain personal accident insurance and supplemental liability protection from Enterprise, he signed his initials on the front of the contract to decline those options. Koshy did contract to pay an additional sum to waive responsibility for all damage to the vehicle.

[¶ 13]  On the front of the contract, Ranjini was listed as an additional authorized driver. The contract also stated on its front page that Enterprise permitted the car to be used throughout New England. At the time of the accident, Ranjini was on a personal errand in Maine. Koshy was not in the car, and there is no indication in the record that Koshy operated the car at any time after he signed the rental agreement.

[¶ 14]  When Ranjini's accident occurred, Koshy's personal automobile was insured by a policy with State Farm. The policy provided coverage for bodily injury and property damage liability incurred through the "use" of a nonowned automobile by the named insured.

## IV.  DISCUSSION

### A.  Issues Arising From the Tort Action

[¶ 15]  The financial obligations of Enterprise, Scandent, and Koshy turn primarily on the following considerations: (1) whether Scandent and Koshy had an agency relationship; and (2) whether the indemnification provisions of the rental agreement are unenforceable because (a) the agreement violates Maine's statute governing rental vehicle accident liability, (b) the agreement violates public policy, or (c) pursuant to contract principles, the agreement must be interpreted against Enterprise as the drafter or is an unconscionable contract of adhesion.

### 1.  Agency

[¶ 16]  We begin by addressing the relationship between Koshy and Scandent to determine whether Koshy was acting as Scandent's agent. Pursuant to either Maine or New Hampshire law, an undisclosed principal and the principal's agent may both be held liable on contracts entered into by the agent on behalf of the principal. *See Treadwell v. J.D. Constr. Co.,* 2007 ME 150, ¶¶ 20, 21, 938 A.2d 794, 798–99; *O'Connor v. Hancock,* 135 N.H. 251, 604 A.2d 565, 566 (1992); *Patterson v. Tirollo,* 133 N.H. 623, 581 A.2d 74, 76 (1990); *Cmty. Oil Co. v. Hashem,* 106 N.H. 291, 210 A.2d 475, 477 (1965). The elements of an agency relationship are "(1) authorization from the principal that the agent shall act for him or her; (2) the agent's consent to so act; and (3) the understanding that the principal is to exert some control over the agent's actions." *Dent v. Exeter Hosp., Inc.,* 155 N.H. 787, 931 A.2d 1203, 1209 (2007) (quotation marks omitted); *see also Caluri v. Rypkema,* 570 A.2d 830, 832–33 (Me.1990) (stating same elements of agency in Maine), *cert. denied,* 498 U.S. 818, 111 S.Ct. 62, 112 L.Ed.2d 37 (1990).

[¶ 17]  Although Scandent was not listed on the rental agreement, and the summary judgment record contains no facts demonstrating that Scandent's role was disclosed to Enterprise, the parties agree that Koshy rented the car as requested by

Scandent for purposes of providing an automobile for personal and business use to Ranjini and other employees who were temporarily in the United States to work for Scandent. The parties also agree that Scandent reimbursed Koshy for his costs. Therefore, an express agency relationship existed between Koshy and Scandent. *See Desfosses v. Notis*, 333 A.2d 83, 86 (Me. 1975) (stating that agency arises when one person manifests to another that the other shall act on his behalf and be subject to his control, and the other consents to so act); *see also Patterson*, 581 A.2d at 76–77 (same).

[¶ 18] Accordingly, the court erred in concluding that Scandent was entitled to summary judgment on the issue of agency based on a conclusion that *Ranjini* was not acting in the scope of her employment. Koshy's conduct in renting the vehicle for his employer—not Ranjini's operation of the vehicle for personal errands when the accident occurred—is relevant to determining Scandent's liability on the rental agreement that Koshy signed.[4] Because the undisputed material facts demonstrate that Koshy executed the rental agreement with actual authority to act for Scandent, we conclude that Scandent was an undisclosed principal acting through its agent, Koshy, and therefore, to the extent that Koshy bears fiscal responsibility pursuant to the rental agreement, Scandent is also responsible.[5]

## 2. Enforceability of the Indemnification Provisions of the Rental Agreement

[¶ 19] Scandent and Koshy contend that the rental agreement's indemnification provisions are unenforceable because (a) they conflict with Maine's rental vehicle liability statute, 29–A M.R.S. § 1652,[6] (b)

---

4. The issue of Ranjini's operation of the car for personal purposes was, however, relevant to the separate issue of Scandent's potential vicarious liability for its employee's tortious conduct. If Ranjini had been operating the car within the scope of her employment with Scandent, Scandent would have been vicariously liable based on agency principles, separate from any statutorily created vicarious liability or contractual indemnification provisions. *See Spencer v. V.I.P., Inc.*, 2006 ME 120, ¶ 6, 910 A.2d 366, 367.

5. We are not asked in this proceeding to allocate responsibility as between Koshy and Scandent.

6. The statute provides:
   **Owner and renter jointly and severally liable**
   1. **Liability.** An owner engaged in the business of renting motor vehicles, with or without drivers, who rents a vehicle to another for use on a public way, is jointly and severally liable with the renter for damage caused by the negligence of the renter in operating the vehicle and for any damages caused by the negligence of a person operating the vehicle by or with the permission of the renter.

29–A M.R.S. § 1652 (2009). The effect of this statute has apparently been preempted by recent federal legislation since the time of contract and the accident at issue here:
> An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
>> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users or SAFETEA–LU, Pub.L. No. 109–59, § 10208, 119 Stat. 1144, 1935 (2005) (codified at 49 U.S.C.S. § 30106(a) (LexisNexis Supp. 2010)); *see Green v. Toyota Motor CreditCorp*, 605 F.Supp.2d 430, 434–36 (E.D.N.Y.2009) (upholding constitutionality of statute). The parties do not suggest that this federal Act

they violate public policy, and (c) pursuant to contract principles, they must be construed to meet the renter's reasonable expectations and are part of an unconscionable contract of adhesion. We discuss each issue separately.

### a. Applicability and Effect of 29-A M.R.S. § 1652

[¶ 20] Enterprise argues that, because the rental agreement was executed in New Hampshire with a New Hampshire resident, New Hampshire law applies and Maine's joint and several liability statute, 29-A M.R.S. § 1652, is inapplicable and irrelevant. We therefore first consider whether Maine law applies and whether, if Maine law does apply, section 1652 renders the indemnification provisions of the rental agreement between Enterprise and Scandent unenforceable.

### (i) Choice of Law

[¶ 21] Because Maine is the forum state, we apply Maine's choice of law rules to determine which state's substantive rules apply to the liability questions raised on appeal. *See, e.g., Flaherty v. Allstate Ins. Co.,* 2003 ME 72, ¶ 16, 822 A.2d 1159, 1165–66; *see also* Restatement (Second) Conflict of Laws §§ 145, 146 (1971). Although contract issues have been raised on appeal, questions regarding the allocation of liability for tortious conduct are appropriately addressed pursuant to tort choice-of-law principles. *See Flaherty,* 2003 ME 72, ¶¶ 11–22, 822 A.2d at 1164–68 (applying tort choice-of-law principles in a wrongful death case involving insurance coverage issues); *cf. Baybutt Constr. Corp. v. Commercial Union Ins. Co.,* 455 A.2d 914, 917–19 (Me.1983) (applying contract choice-of-law principles in a declaratory judgment action brought to resolve a pure insurance coverage issue), *overruled in part on other*

*grounds by Peerless Ins. Co. v. Brennon,* 564 A.2d 383, 386–87 (Me.1989).

[¶ 22] Pursuant to section 146 of the Restatement, in an action for a personal injury, "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties." Restatement (Second) Conflict of Laws § 146; *see Flaherty,* 2003 ME 72, ¶ 16, 822 A.2d at 1165–66. Section 145 of the Restatement provides a list of the factors and contacts to be considered, in conjunction with the general choice-of-law factors set forth in section 6 of the Restatement, in making this determination:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) Conflict of Laws § 145(2); *see Flaherty,* 2003 ME 72, ¶ 16, 822 A.2d at 1166. "These contacts are to be evaluated according to their relative importance with respect to the particular issue." Restatement (Second) Conflict of Laws § 145(2).

[¶ 23] Regarding the issue of liability for the injured parties' damages, the most significant contacts are with Maine, where the accident occurred and the injuries arose. The statute applicable to rental vehicles operating within Maine embodies a strong policy favoring the compensation of individuals injured through the negligent operation of rental vehicles on Maine roads. *See* 29-A

affected the applicability of section 1652 at     the time of the accident.

M.R.S. § 1652; *Piche v. Nugent,* 2005 WL 2428156, at *5, 2005 U.S. Dist. Lexis 22275, at *9 (D.Me. Sept. 30, 2005) (noting the Maine Legislature's "interest in imposing vicarious liability on out-of-state owners of rental vehicles that come to cause damage in Maine through the negligence of their operators and/or renters"). Accordingly, we conclude that Maine law applies in determining the liability of the owner and renter of a vehicle for an accident caused through the tortious use of that vehicle on Maine roads.

### (ii) Section 1652 and the Enforcement of the Rental Agreement

[¶ 24] Enterprise has paid the injured parties in full. It now seeks to effectuate the indemnification clauses of the rental agreement against Scandent and Koshy. To determine the relative responsibilities of the parties, we must first determine what effect, if any, section 1652 has on the enforcement of the indemnification agreement in Maine. Section 1652 provides:

> An owner engaged in the business of renting motor vehicles, with or without drivers, who rents a vehicle to another for use on a public way, is jointly and severally liable with the renter for damage caused by the negligence of the renter in operating the vehicle and for any damages caused by the negligence of a person operating the vehicle by or with the permission of the renter.

29–AM.R.S. § 1652(1).

■ [¶ 25] The first question presented is whether, independent of the rental agreement, section 1652 makes the *renter,* here Scandent and Koshy, jointly and severally liable with the owner for damages incurred when the individual who was operating the vehicle was not the renter but was operating with the renter's permission.

■■ [¶ 26] Ordinarily, a person who is in control of a vehicle and allows another individual to drive it is not liable in tort for the driver's negligence. *See Ashe v. Enterprise Rent-A-Car,* 2003 ME 147, ¶ 8, 838 A.2d 1157, 1159-60. The person who authorizes another to operate a vehicle may be liable for the driver's negligence, however, if either (1) the person lending the vehicle had reason to know that the driver should not be trusted with the vehicle, *see Sweet v. Austin,* 158 Me. 90, 93–95, 179 A.2d 302, 304–05 (1962), or (2) the driver operated the vehicle as an agent or employee of the person who authorized its operation, *see Ashe,* 2003 ME 147, ¶ 8, 838 A.2d at 1159–60.

[¶ 27] Here, Enterprise has not asserted that Scandent and Koshy negligently entrusted Ranjini with the vehicle; nor has Enterprise set forth facts demonstrating that Ranjini was acting within the scope of her employment when she caused the accident in 2003. Scandent and Koshy cannot, therefore, be held liable based on common law tort principles for Ranjini's negligence.[7]

■ [¶ 28] Because Scandent and Koshy would not generally be liable in tort

---

7. Further, although an owner of a rental vehicle may have a contract remedy if the owner restricts a renter from entrusting the operation of the vehicle to another, the agreement here expressly *authorized* Ranjini to drive the vehicle. Although Koshy signed the rental agreement, which stated on its front page that the identified additional drivers were "under [his] control and direction to drive the rented vehicle for [him] and in [his] behalf," and that he was "responsible for their acts while … driving," it is clear from the facts asserted in the present case that Ranjini was not operating the vehicle on behalf of either Koshy or Scandent when the accident occurred. Questions concerning the enforceability of this provision and the related indemnification provisions of the contract will be addressed separately below.

for Ranjini's negligence, we must determine whether, in contravention of the common law, Scandent and Koshy may be held liable for Ranjini's negligence pursuant to 29–A M.R.S. § 1652. Enterprise asserts that the statute makes a renter jointly and severally liable for an authorized operator's negligence, even when the renter was not negligent in allowing that operator to use the vehicle.

[¶ 29] To test Enterprise's argument, we look first to the language of the statute. When the language of the statute is clear and unambiguous, we interpret the statute according to its plain meaning. *Garrison City Broad., Inc. v. York Obstetrics & Gynecology, P.A.*, 2009 ME 124, ¶ 9, 985 A.2d 465, 468. If statutory language is susceptible of more than one meaning, we look to legislative history and statutory context to interpret the ambiguous language. *Id.*; *Gaeth v. Deacon*, 2009 ME 9, ¶ 15, 964 A.2d 621, 625.

[¶ 30] When the Legislature enacts a statute in derogation of the common law, the statute must be clear and unambiguous in its effect; "the common law is not to be changed by doubtful implication . . . [and] a statute in derogation of it will not effect a change thereof beyond that clearly indicated either by express terms or by necessary implication." *Batchelder v. Realty Res. Hospitality, LLC*, 2007 ME 17, ¶ 23, 914 A.2d 1116, 1124 (quotation marks omitted). For this reason, we will strictly interpret a statute that runs counter to established common law principles. *See id.*

[¶ 31] The relevant provision of section 1652 is reasonably susceptible of two different meanings. Depending on how the provision is read, a renter who is not the driver and has not been negligent may either be jointly and severally liable with the owner of the rental vehicle or have no statutory liability whatsoever.

[¶ 32] Following concepts of grammatical construction of legislation, *see Me. Ass'n of Health Plans v. Superintendent of Ins.*, 2007 ME 69, ¶¶ 38–39, 923 A.2d 918, 928–29; *Wagner v. Cong. Square Hotel Co.*, 115 Me. 190, 195, 98 A. 660, 662 (1916), the operative sentence in this matter could be read in the following way to establish joint and several liability between the owner of a vehicle rental business and a renter who was neither driving nor negligent:

> An owner engaged in the business of renting motor vehicles . . . is jointly and severally liable *with the renter* [1] for damage caused by the negligence of the renter in operating the vehicle and [2] for any damages caused by the negligence of a person operating the vehicle by or with the permission of the renter.

29–A M.R.S. § 1652(1) (emphasis added). If the statute is read this way, the renter is jointly and severally liable with the owner in either of two circumstances: (1) when the renter is negligent or (2) when a person operating the vehicle with the renter's permission is negligent. This is one logical and grammatically cogent way to read the statute, and could represent the Legislature's intention in choosing the words of this statute.

[¶ 33] There is, however, a second reading of the same language that could also represent the Legislature's intent:

> An owner engaged in the business of renting motor vehicles . . . is jointly and severally liable [1] with the renter for damage caused by the *negligence of the renter* in operating the vehicle and [2] for any damages caused by the *negligence of a person operating the vehicle* by or with the permission of the renter.

*Id.* (emphasis added). In this reading, the owner rental business is jointly and severally liable with (1) a renter who has negligently operated the motor vehicle or (2) a

person operating with the renter's permission who has negligently operated the vehicle. Although the grammatical parallelism of the first reading may be somewhat smoother, the creation of joint and several liability only with a negligent person creates a logical parallelism, consistent with the common law, that the Legislature may have intended. *Cf. Great N. Nekoosa Corp. v. State Tax Assessor,* 675 A.2d 963, 966 (Me.1996) (rejecting a parallel construction of a term because that interpretation "rest[ed] on a faulty premise and [found] no support in the statute, explicit or implicit"). We must therefore determine which reading of this ambiguous statute is more likely to represent the Legislature's intent.

[¶ 34] We will not interpret an ambiguous statute to be in derogation of the common law unless the Legislature clearly expressed the intent to diverge from the common law by the clear and unambiguous language of the statute or by necessary implication. *See Picher v. Roman Catholic Bishop of Portland,* 2009 ME 67, ¶ 24, 974 A.2d 286, 294. If a statute that may be read in derogation of the common law is ambiguous, the statute may be construed in derogation of the common law only if the legislative history demonstrates that the Legislature so intended. *See id.* ¶ 26, 974 A.2d at 294–95.

[¶ 35] The legislative history of this ambiguous statute is unilluminating. Originally enacted in 1929, the statutory language at issue has survived many revisions without any substantive alteration. *See* P.L. 1993, ch. 683, § A–2; P.L. 1955, ch. 370, § 3; P.L. 1929, ch. 327, § 26. Neither the initial enactment, nor any subsequent amendment, was accompanied by any reported floor debate, committee activity, or other statements of record that are pertinent to the issue we consider today.

[¶ 36] Looking to the language of the statute in context, however, we are able to discern that, in enacting section 1652, the Legislature was focused on rental businesses that own and rent vehicles to drivers who operate those cars within the State of Maine. *See Piche,* 2005 WL 2428156, at *5–6, 2005 U.S. Dist. Lexis 22275, at *13–14; *see also* P.L. 1929, ch. 327, § 27 (requiring owners of motor vehicles engaged in the business of renting those vehicles to keep a record of who rents them, as part of the same Public Law that enacted the original version of section 1652). There is little question that the Legislature intended to ensure that owners in the business of renting vehicles would compensate third parties for injuries resulting from the negligent operation of rented vehicles on Maine roads. *Piche,* 2005 WL 2428156, at *5–6, 2005 U.S. Dist. Lexis 22275, at *13–14.

[¶ 37] There is nothing in the statutory context or legislative history, however, that indicates a legislative intent to impose a new form of vicarious liability on a renter who did not negligently operate a rental vehicle and who would not be liable under existing tort law theories. The first reading, although more grammatically smooth, places liability on a renter in the absence of culpability and creates new liability in derogation of the common law. *See Sweet,* 158 Me. at 93–95, 179 A.2d at 304–05 (recognizing tort liability if a person lends a vehicle knowing that the driver should not be trusted); W. Page Keeton et al., *Prosser and Keeton on Torts* § 73, at 523–24 (5th ed. 1984) ("If the owner is not present in the car, but has entrusted it to a driver who is not his servant, there is merely a bailment, and there is usually no basis for imputing the driver's negligence to the owner."). The second reading of the statute, making the rental company jointly and severally liable in each instance

with a person who is negligent, tracks with traditional concepts of tort law and culpability. *See Ashe,* 2003 ME 147, ¶ 8, 838 A.2d at 1159–60; *Sweet,* 158 Me. at 93–95, 179 A.2d at 304–05; Keeton, *Prosser and Keeton on Torts* § 73, at 523–24.

[¶ 38] Although the Legislature explicitly and unequivocally changed the common law to make owners in the business of renting vehicles liable for damages without fault in identified circumstances, we cannot interpret the statute to impose liability on renters who would not be liable pursuant to common law tort principles in the absence of clear statutory language, necessary implication based on the context of the statute, or clear legislative history indicating that the Legislature intended to contravene the common law regarding the liability of non-negligent renters. *See Garrison City Broad., Inc.,* 2009 ME 124, ¶ 9, 985 A.2d at 468; *Picher,* 2009 ME 67, ¶¶ 24–26, 974 A.2d at 294–95; *Ashe,* 2003 ME 147, ¶ 8, 838 A.2d at 1159–60; *Sweet,* 158 Me. at 93–95, 179 A.2d at 304–05; Keeton, *Prosser and Keeton on Torts* § 73, at 523–24. We therefore will not interpret section 1652 to set forth an entirely new form of liability for those who rent from vehicle owners in the business of renting vehicles. *See Picher,* 2009 ME 67, ¶ 24, 974 A.2d at 294.

[¶ 39] Accordingly, we construe section 1652 to create joint and several liability between the rental vehicle's owner and (1) a renter operating the rented vehicle negligently, or (2) a person authorized by the renter to operate the vehicle who does so negligently.[8]

[¶ 40] Ranjini was authorized to operate the vehicle both by Enterprise and by Scandent and Koshy. Enterprise has not suggested that Scandent or Koshy were negligent in permitting Ranjini to operate the vehicle, and the summary judgment record demonstrates that Ranjini was not operating the vehicle for work-related purposes at the time of the accident. *See Spencer v. V.I.P. Inc.,* 2006 ME 120, ¶ 6, 910 A.2d 366, 367 (stating that an employer is liable for an employee's conduct only if its employee was acting within the scope of employment). Enterprise's liability is therefore joint and several with *Ranjini* pursuant to our construction of the statute, not Scandent and Koshy. Because no separate theory of tort liability for Scandent's or Koshy's actions has been asserted in this case, and because we have concluded that section 1652 does not render them jointly and severally liable with Enterprise, Scandent and Koshy will not be liable for damages in this matter unless the indemnification provisions contained within the rental agreement are enforceable against them.

**b.** Transfer of Statutory Liability

[¶ 41] Scandent and Koshy argue that we should not enforce the indemnification agreement because it impermissibly transfers statutory liability to a party who does not share that liability.

---

8. We acknowledge the contrary interpretation of this statute reached twenty-three years ago by the United States District Court in *Rose v. Ryder Truck Rental Inc.,* 649 F.Supp. 32, 33–34 (D.Me.1986). There, the court held that the owner must be jointly and severally liable *"with* someone" when a driver operating with the permission of the renter causes damages through negligence, and that, because "the renter is in the best position to control the vehicles' use," the Legislature must have intended to make the renter jointly and severally liable with the owner even when the renter was not operating the vehicle and was not culpable. *Id.* at 34; *cf. Ryder Truck Rental, Inc. v. Valley Forge Ins. Co.,* 1989 Me.Super. Lexis 125, at *13 (June 9, 1989) (Alexander, J.) (concluding that the owner's "financial responsibility for a rented motor vehicle [is] joint and several with the renter, and without financial limitation"). We decline to follow this interpretation.

*Cf. ELRAC, Inc. v. Ward,* 96 N.Y.2d 58, 724 N.Y.S.2d 692, 748 N.E.2d 1, 6–7 (2001) (holding that indemnification agreements in vehicle rental agreements are enforceable only for amounts exceeding the state's statutory minimum financial responsibility limits). We will not enforce a contract if it is illegal, contrary to public policy, or contravenes the positive legislation of the state. *Bureau of Me. State Police v. Pratt,* 568 A.2d 501, 505 (Me.1989).

▆▆▆▆ [¶ 42] A contract is unenforceable as violating public policy in Maine only if it violates a well-defined and dominant policy that may be ascertained from the law and legal precedent. *Id.* at 505–06; *see also Court v. Kiesman,* 2004 ME 72, ¶ 11, 850 A.2d 330, 333 ("A contract is against public policy if it clearly appears to be in violation of some well established rule of law, or that its tendency will be harmful to the interests of society." (quotation marks omitted)). To determine whether a contract violates public policy, we balance the freedom of the parties to contract against the detriment to society that would result from enforcement of that contract. *Court,* 2004 ME 72, ¶ 11, 850 A.2d at 333.

[¶ 43] By statute, the Legislature has provided for joint and several, vicarious liability on the part of a vehicle owner in the business of renting vehicles either (1) with a renter who is negligent, or (2) with a person who operates the vehicle with the renter's permission and is negligent. 29–A M.R.S. § 1652. Because we have concluded that the statute does not impose liability on a renter for the negligence of a driver operating with that renter's permission, the question now before us is whether an indemnification agreement that transfers statutory liability to a party who is not otherwise liable, directly or vicariously, is unenforceable because it contravenes the positive legislation of the state.[9]

[¶ 44] Although the statute does not place liability on the renter when the renter is not negligent, nothing in the statute precludes the renter and the owner rental business from contracting for the renter to indemnify the owner for that liability. *See Court,* 2004 ME 72, ¶ 12, 850 A.2d at 333 (recognizing that parties have "considerable latitude" in their freedom to contract); *Allstate Ins. Co. v. Elwell,* 513 A.2d 269, 272 (Me.1986) (acknowledging the freedom to contract and stating that contracts are not lightly set aside). The statutory purpose to ensure compensation for injured third parties, *see Piche,* 2005 WL 2428156, at *5–6, 2005 U.S. Dist. Lexis 22275, at *13–14, is satisfied by Enterprise's payment to those parties. This statutory purpose has therefore been served, whether or not Enterprise is later indemnified by the vehicle's renter, or by any other person for that matter. In these circumstances, the detriment to society is not so great as to overwhelm the freedom of parties to contract. *See Court,* 2004 ME 72, ¶ 11, 850 A.2d at 333. Thus, the indemnification provisions of the rental agreement are not illegal, do not violate positive legislation, and, because the contract language provides for indemnification after Enterprise has paid the injured parties, are not against Maine's public policy.

#### c. Application of Contract Principles

[¶ 45] Scandent and Koshy next argue that the indemnification provisions are nevertheless unenforceable, based on contract principles concerning unconscionability and unfairness, because the provisions

9. Our analysis applies equally to Scandent and Koshy's argument that Enterprise is attempting to transfer its statutory financial responsibility obligations. *See* 29–A M.R.S. § 1611 (2009).

do not comport with a renter's reasonable expectations, are not clear and conspicuous, and constitute an unenforceable contract of adhesion. They argue that the indemnification provisions appeared in small print on the back of the agreement and that the existence of two indemnification clauses created an ambiguity that must be construed against Enterprise as the drafter.

### (i) Choice of Law

[¶ 46] Before addressing these arguments, we must determine whether Maine or New Hampshire law applies to the contract issues raised in this summary judgment appeal. Again, we apply the choice-of-law principles of Maine as the forum state. *See, e.g., Flaherty,* 2003 ME 72, ¶ 16, 822 A.2d at 1165–66. Maine has adopted the approach of sections 186 to 188 of the Restatement (Second) of Conflict of Laws (1971), to govern choice of law for contract issues. *See Schroeder v. Rynel, Ltd.,* 1998 ME 259, ¶ 8, 720 A.2d 1164, 1166; *Baybutt Constr. Corp.,* 455 A.2d at 917–19, *overruled on other grounds by Peerless Ins. Co.,* 564 A.2d at 386–87.

[¶ 47] Section 188 of the Restatement is applicable when the contract does not include a choice-of-law provision:

Law Governing in Absence of Effective Choice by the Parties

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 188. Section 6 of the Restatement provides general principles governing choice of law:

Choice–Of–Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

[¶ 48] Although contract choice-of-law principles, like tort choice-of-law principles, involve a determination of the most significant contacts with a jurisdiction, different contacts take primacy in consider-

ing contract questions. For instance, "the protection of the justified expectations of the parties is of considerable importance in contracts whereas it is of relatively little importance in torts." Restatement (Second) of Conflict of Laws § 188 cmt. b (1971).

[¶ 49] Examining the facts of the present case pursuant to the Restatement's choice-of-law principles for contracts, several factors weigh in favor of applying New Hampshire law: New Hampshire was the place of contracting and negotiation of the contract, Koshy resides in New Hampshire, Scandent conducts business in New Hampshire, and Enterprise operates a place of business in New Hampshire. Weighing in favor of applying Maine law are the location of the rented vehicle at the time of the accident, Enterprise's conduct of business in Maine, the contract's authorization of travel throughout New England, and the provision in the contract that, at least for the purpose of determining optional insurance limits, the place of operation governs the choice of law.

[¶ 50] Although the rental agreement acknowledges the application of the law of the jurisdiction in which an accident occurs for purposes of complying with state insurance statutes, the primary relationships and contacts with respect to the rental agreement between Enterprise and Koshy are with New Hampshire, where the contract was negotiated, executed, and primarily performed, where Koshy resided, and where Scandent conducted its business. Accordingly, we apply New Hampshire law to determine whether there are any bases to deny enforcement of the indemnification provisions of the contract.

### (ii) Application of New Hampshire Contract Law

[¶ 51] A contract is given its plain meaning if the terms are clear. *See*

*In re Liquidation of Home Ins. Co.*, 157 N.H. 543, 953 A.2d 443, 447 (2008). If a contract's language is ambiguous, however, it is interpreted to have the meaning that reasonable persons would attach to it. *See Gamble v. Univ. Sys. of N.H*, 136 N.H. 9, 610 A.2d 357, 361 (1992). Where possible, the interpretation of the contract will avoid results that are harsh and unreasonable or that place one party at the other's mercy. *Id.*

[¶ 52] Koshy and Scandent argue that the existence of the two indemnification provisions creates an ambiguity in the contract and that the ambiguity should be construed to meet their reasonable expectations. Koshy and Scandent are correct that the contract contains two indemnification provisions as well as a provision by which the renter assumes responsibility for the conduct of a driver operating the vehicle on behalf of the renter with permission from the renter and the owner. These provisions are all consistent, however, and are not ambiguous in any way. Because there is no ambiguity in the indemnification provisions, we must interpret the contract pursuant to its plain language. *See In re Liquidation of Home Ins. Co.*, 953 A.2d at 447. That language provides for Koshy and Scandent to completely indemnify Enterprise.

[¶ 53] Koshy and Scandent next contend that the indemnification provisions must be clear and conspicuous to be enforceable. This particular requirement arises, however, from Maine law providing for the strict construction of a contract that provides for a party to be indemnified for losses *resulting from that party's own negligence. See Emery Waterhouse Co. v. Lea*, 467 A.2d 986, 993 (Me.1983). As it applies in the present case, the indemnification provision at issue allocates the risk

between the owner and renter for the negligence of a third person driving with the renter's permission. Even if New Hampshire were to follow the rule of *Emery Waterhouse,* the facts set forth in the parties' statements of material facts do not justify the application of that law because Enterprise was not seeking indemnification for its own negligence.

[¶ 54] We therefore turn to the remaining question: whether, on the summary judgment record, Scandent and Koshy have raised genuine issues of material fact such that a fact-finder must determine whether the rental agreement is an unenforceable contract of adhesion.

[¶ 55] A contract of adhesion is a contract that is prepared by one party and submitted to the other on a take-it-or-leave-it basis. *Magulas v. Travelers Ins. Co.,* 114 N.H. 704, 327 A.2d 608, 609 (1974). Although the disparity in bargaining power between the parties requires that, in the event of ambiguity, such contracts will be construed against the drafter to meet the other party's reasonable expectations, *id.,* contracts of adhesion are not inherently unenforceable, *see Mills v. Nashua Fed. Sav. & Loan Ass'n,* 121 N.H. 722, 433 A.2d 1312, 1315 (1981); *see also Pittsfield Weaving Co. v. Grove Textiles, Inc.,* 121 N.H. 344, 430 A.2d 638, 640 (1981). A party may avoid the enforcement of an unambiguous contract of adhesion, however, by establishing that the contract is unconscionable. *PK's Landscaping, Inc. v. New Eng. Tel. & Tel. Co.,* 128 N.H. 753, 519 A.2d 285, 286 (1986); *see also Mills,* 433 A.2d at 1315.

[¶ 56] Unconscionability may be established pursuant to common law principles or pursuant to the Uniform Commercial Code, N.H.Rev.Stat. Ann. § 382–A:2A–108 (1994); *see* N.H.Rev.Stat. Ann. § 382–A:2A–102 (1994) ("This Article applies to any transaction, regardless of form, that creates a lease."); N.H.Rev.Stat. Ann. § 382–A:2A–103(1)(j) (Supp. 2009) (defining lease to mean "a transfer of the right to possession and use of goods for a term in return for consideration").

[¶ 57] When a term in a statute is not legislatively defined, New Hampshire courts look to common law concepts in understanding the undefined term. *See, e.g., State v. McMillan,* 158 N.H. 753, 973 A.2d 287, 290–91 (2009); *Dovaro 12 Atl., LLC v. Town of Hampton,* 158 N.H. 222, 965 A.2d 1096, 1102 (2009). Because the term "unconscionability" is not defined in the Uniform Commercial Code, common law concepts of unconscionability will define that term. *Cf. McMillan,* 973 A.2d at 290–91; *Dovaro 12 Atl., LLC,* 965 A.2d at 1102. Accordingly, pursuant to either the Code or the common law, Koshy and Scandent will survive Enterprise's motion for summary judgment only by raising genuine issues of material fact on the elements of common law unconscionability.

[¶ 58] A contract is unconscionable pursuant to the common law of New Hampshire if (1) the contract contains terms that unreasonably favor one party, and (2) the other party lacked a meaningful choice. *See Pittsfield Weaving Co.,* 430 A.2d at 639. A party lacks a meaningful choice if there is overreaching by the other party or a gross inequality in bargaining power. *See id.; Hydraform Prods. Corp. v. Am. Steel & Aluminum Corp.,* 127 N.H. 187, 498 A.2d 339, 343 (1985).

[¶ 59] New Hampshire law is not entirely clear about who bears the burden of establishing unconscionability, though certain cases suggest that the party asserting unconscionability bears the burden of proof. *See In re Estate of Hollett,* 150 N.H. 39, 834 A.2d 348, 351 (2003) (stating that the party seeking to invalidate a pre-

nuptial agreement must prove that it is unenforceable); *see also Polonsky v. McIlwaine*, 114 N.H. 467, 324 A.2d 729, 731–32 (1974) (stating that a trial court will decide factual disputes regarding whether unconscionable conduct prevents ordering specific performance of a contract). Regardless of who bears the burden, however, the determination of whether a particular provision of a contract is unconscionable is a fact-laden question. *See generally* 7 Joseph M. Perillo, *Corbin on Contracts* § 29.4, at 387–93 (2002); *cf.* N.H.Rev. Stat. Ann. § 382–A:2–302(2) (1994) (providing that evidence of the "commercial setting, purpose and effect" of a contract is of aid when determining the unconscionability of a contract for the sale of goods as a matter of law). Indeed, the Uniform Commercial Code requires that a court, "on its own motion or that of a party, *shall* afford the parties a reasonable opportunity to present evidence as to the setting, purpose, and effect of the lease contract or clause thereof, or of the conduct." N.H.Rev.Stat. Ann. § 382–A:2A–108(3) (1994) (emphasis added).

[¶ 60] Here, the summary judgment record reveals that Koshy, acting for Scandent, entered into a pre-drafted agreement with Enterprise that, if enforced, will transfer extensive statutory liability to Koshy and Scandent by means of two clauses written in small print on the back of the agreement. We cannot, in these circumstances, say that Enterprise is entitled to judgment as a matter of law on the question of unconscionability. *See* M.R. Civ. P. 56(c). The summary judgment record, when viewed in the light most favorable to Koshy and Scandent, *Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp.*, 2005 ME 29, ¶ 7, 868 A.2d 220, 224, raises a genuine issue regarding whether the indemnification provisions of the rental agreement are unconscionable and unenforceable. In these circumstances, we must vacate the summary judgment for Enterprise and remand for further development of the facts, particularly those facts concerning the circumstances of execution.

3. Conclusion Regarding the Judgments Entered in the Tort Litigation [10]

[¶ 61] Because we conclude that the undisputed facts demonstrate Scandent's status as an undisclosed principal acting through Koshy, we vacate the summary judgment entered in Scandent's favor. We also vacate the summary judgment in

---

10. Koshy and Scandent also argue that Enterprise is seeking subrogation from its own insured by attempting to effectuate the indemnification provision. Scandent has not cited to any Maine or New Hampshire law addressing the precise concept of prohibitions against insurers suing their own insureds. Rather, it relies exclusively on " '[g]eneral principles of insurance law [that] prevent a casualty insurer from seeking indemnification from its insured,' " citing *Clark v. DS Rentco, Inc.*, 175 Ariz. 233, 854 P.2d 1219, 1221 (Ct.App.1993) (quoting *Consol. Enterprises, Inc. v. Schwindt*, 172 Ariz. 35, 833 P.2d 706, 710 (1992), *superseded in part by statute as recognized in Uyleman v. D.S. Rentco*, 194 Ariz. 300, 981 P.2d 1081, 1085–86 (Ct.App.1999)).

We need not address the applicability of these principles because the rental company here did not agree to provide insurance to Koshy and Scandent to cover the liability arising from this accident. *Cf. Luna v. Hyundai Motor Am.*, 25 A.D.3d 321, 808 N.Y.S.2d 38 (2006) (holding that an indemnification agreement was unenforceable when the renter had paid for insurance from the rental company and the rental company had failed to procure that insurance). Although Enterprise had insurance adequate to cover liability to the injured third parties, it did not *insure* the renters because, although Koshy and Scandent purchased vehicle damage coverage from Enterprise, they did not contract with Enterprise for liability insurance that would cover the damages asserted in this matter.

favor of Enterprise against Koshy because further factual development is necessary on the question of unconscionability. We remand for Scandent, Koshy, and Enterprise to proceed to trial on that issue. We now address Koshy's separate appeal from the summary judgment entered in State Farm's declaratory judgment action.

## B. Declaratory Judgment on the State Farm Policy

[¶ 62] Koshy argues that the court erred in denying his motion to stay the declaratory judgment action because the issue of indemnification could be resolved only after the determination of liability. Koshy bases his argument on our general rule that a court may not decide whether an insurer has a duty to indemnify until liability has been determined in a tort claim:

> To secure the just, speedy and inexpensive determination of an action involving a duty to defend and a duty to indemnify and avoid a duplication of trials requires that courts proceed in the following order: the determination of a duty to defend, then the determination of liability in the underlying action, and finally the determination of the duty to indemnify.

*Penney v. Capitol City Transfer, Inc.,* 1998 ME 44, ¶ 5, 707 A.2d 387, 389. We have held that the facts must be finally determined because "duty to indemnify cases involve the comparison of the policy with the facts proved at trial." *Foremost Ins. Co. v. Levesque,* 2007 ME 96, ¶ 13, 926 A.2d 1185, 1189. "The insured's duty to indemnify ... may depend on the actual facts or legal theory behind the underlying action against the insured by the injured party." *U.S. Fidelity & Guar. Co. v. Rosso,* 521 A.2d 301, 303 (Me.1987).

[¶ 63] We have recognized limited exceptions to the rule that a court should not decide an insurer's duty to indemnify until after the trial of the underlying tort claim. "[W]hen the case is based on such issues as nonpayment of a premium, cancellation of a policy, failure to cooperate or lack of timely notice, then both obligations may be appropriately determined prior to the entering of judgment." *Am. Policyholders' Ins. Co. v. Cumberland Cold Storage Co.,* 373 A.2d 247, 250 (Me.1977). These exceptions arise because

> the coverage dispute depends entirely on the relationship between the insurer and the insured, not on facts to be determined in the underlying litigation. Additional exceptions exist where the insured, the insurer, and the injured claimant stipulate to the facts material to the insurer's duty to indemnify or where the pertinent facts have been determined in other proceedings.

*Patrons Oxford Mut. Ins. Co. v. Garcia,* 1998 ME 38, ¶ 7, 707 A.2d 384, 386 (footnotes omitted).

[¶ 64] Because none of these exceptions apply in the present case, and because the issue of Koshy's State Farm coverage may be moot if the indemnification provisions of the rental agreement are determined to be unenforceable, we vacate the denial of the motion for a stay and the subsequent entry of summary judgment, and we remand for the matter to be stayed until the related litigation between Enterprise, Koshy, and Scandent, has been finally resolved.

## V. CONCLUSION

[¶ 65] Koshy was acting as Scandent's agent in executing the rental agreement; both Koshy and Scandent are therefore liable to Enterprise for indemnification unless, on remand, they demonstrate that the indemnification provisions of the rental agreement are unconscionable and unenforceable. We therefore vacate the summary judgment in favor of Scandent

against Enterprise and the summary judgment in favor of Enterprise against Koshy, and we remand for further proceedings. We also vacate the denial of Koshy's motion to stay the declaratory judgment proceeding brought by State Farm and the subsequent entry of summary judgment for State Farm. We remand this declaratory judgment matter for the court to enter a stay until a final judgment is entered Koshy's pending litigation with Enterprise.

The entry is:

In the matter of *State Farm Mutual Automobile Insurance Company v. Pramodh Koshy et al.*, Yor–07–683, summary judgment vacated. Remanded for the court to enter an order staying the proceedings until the entry of a final judgment in the underlying tort proceeding.

*In the matter of Enterprise Rent–A–Car Company of Boston, Inc. v. Pramodh Koshy et al.*, Yor–08–555, summary judgments in favor of Enterprise against Scandent and Koshy vacated and remanded for entry of a partial summary judgment against Scandent on the issue of Scandent's agency relationship with Koshy and for trial on the issue of unconscionability.